Victor R. **WOLDER** and Marjorie Wolder,
Appellants-Cross-Appellees,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Appellee-Cross-Appellant.**

**ESTATE OF** Marguerite K. **BOYCE** et al.,
Appellees,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Appellant.**

Nos. 136, 373 and 374, Dockets 73–1507,
73–1847 and 73–1848.

United States Court of Appeals,
Second Circuit.

Argued Dec. 19, 1973.

Decided Feb. 21, 1974.

Victor R. Wolder, appellant-cross-appellee pro se.

Jonathan S. Cohen, Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., of the United States; Meyer Rothwacks and Carleton D. Powell, Dept. of Justice, Washington, D. C., on the brief), for appellee-cross-appellant and appellant commissioner of Internal Revenue.

Hewitt A. Conway, New York City, N. Y. (John F. Rossi, New York City, of counsel), for appellees Estate of Marguerite K. Boyce, Victor R. Wolder and Manufacturers Hanover Trust Co.

Before FRIENDLY, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

These two cases, involving an appeal and cross-appeal in the individual taxpayers' case and an appeal by the Commissioner in the estate taxpayer's case, essentially turn on one question: wheth-er an attorney contracting to and performing lifetime legal services for a client receives income when the client, pursuant to the contract, bequeaths a substantial sum to the attorney in lieu of the payment of fees during the client's lifetime. In the individual taxpayers' case, the Tax Court held that the fair market value of the stock and cash received under the client's will constituted taxable income under § 61, Int.Rev. Code of 1954, and was not exempt from taxation as a bequest under § 102 of the Code. From this ruling the individual taxpayers, Victor R. Wolder, the attorney, and his wife, who signed joint returns, appeal. The Tax Court also held that the stock and cash received were constructively received by the taxpayer in 1965, the year of the death of the client, Marguerite K. Boyce, rather than 1966, the year the individual taxpayers actually received the stock and cash. The stock, consisting of 750 shares of common stock in Schering Corp., increased substantially in value from the date of Mrs. Boyce's death on July 24, 1965, until January of 1966 when the stock certificates were actually received by the individual taxpayers. The Commissioner appeals this decision of the Tax Court, the statute of limitations having run on the tax year 1965.[1]

The estate case is conceded by all to hinge upon the ruling in the individual taxpayers' case, at least to the extent that, if the stock and cash which went to Attorney Wolder were taxable income to him, as the Tax Court found in his case, the estate is entitled to deduct the amount of the bequest to him as a debt of the decedent client.

The opinion of the Tax Court, by Judge Tannenwald, in the individual taxpayers' case is reported at 58 T.C. 974; the opinion of the same Tax Court judge in the estate case is reported at P–H Memo T.C., ¶ 72,204.[2] Jurisdic-

1. The Commissioner argues, inter alia, that the taxpayers are estopped from taking advantage of the statute by virtue of a letter, referring to receipt of the stock in 1966, requesting a favorable tax ruling on the main issue here presented.

2. Because we affirm the decision of the Tax Court below that the fair market value of the securities and the cash were taxable income to Wolder, we necessarily affirm the decision of the Tax Court in No. 73–1848 without reaching the question presented by

tion in this court is conferred by § 7482, Int.Rev.Code of 1954.

There is no basic disagreement as to the facts. On or about October 3, 1947, Victor R. Wolder, as attorney, and Marguerite K. Boyce, as client, entered into a written agreement which, after reciting Mr. Wolder's past services on her behalf in an action against her ex-husband for which he had made no charge, consisted of mutual promises, first on the part of Wolder to render to Mrs. Boyce "such legal services as she shall in her opinion personally require from time to time as long as both . . . shall live and not to bill her for such services," and second on the part of Mrs. Boyce to make a codicil to her last will and testament giving and bequeathing to Mr. Wolder or to his estate "my 500 shares of Class B common stock of White Laboratories, Inc." or "such other . . . securities" as might go to her in the event of a merger or consolidation of White Laboratories. Subsequently, in 1957, White Laboratories did merge into Schering Corp. and Mrs. Boyce received 750 shares of Schering common and 500 shares of Schering convertible preferred. In 1964 the convertible preferred was redeemed for $15,845. In a revised will dated April 23, 1965, Mrs. Boyce, true to the agreement with Mr. Wolder, bequeathed to him or his estate the sum of $15,845 and the 750 shares of common stock of Schering Corp. There is no dispute but that Victor R. Wolder had rendered legal services to Mrs. Boyce over her lifetime (though apparently these consisted largely of revising her will) and had not billed her therefor so that he was entitled to performance by her under the agreement, on which she had had a measure of independent legal advice. At least the New York Surrogate's Court (DiFalco, J.) ultimately so found in contested proceedings in which

Mrs. Boyce's residuary legatees contended that the will merely provided for payment of a debt and took the position that Wolder was not entitled to payment until he proved the debt in accordance with § 212, New York Surrogate's Court Act.[3] The Surrogate Court proceedings on the part of the residuary legatees were not instituted until the latter part of February, 1966, and the surrogate's decision thereon was not handed down until September, 1966.

Since in the Commissioner's cross-appeal the timing of receipt is important, it is to be noted that Wolder and Manufacturers Hanover Trust Co. (Manufacturers) were appointed coexecutors of the estate on September 17, 1965, and that at the time of Mrs. Boyce's death the Schering stock was held in a custodial account with Manufacturers and registered in the name of its nominee. By letter dated October 1, 1965, Wolder advised Manufacturers that he elected to receive the cash and stock bequest and "recommended" the distribution be made forthwith of all specific legacies, including his own. Manufacturers did not comply, and in December, 1965, he again requested them to distribute the Schering stock. The estate was highly liquid and there were ample funds to pay creditors, taxes and estimated expenses. It was not until January 13, 1966, however, that Manufacturers assigned the shares; it was not until January 21 that a transfer was made on the books of Schering Corp., and the stock certificates were physically delivered to Wolder on January 25, 1966, about a month before the residuary legatees raised their objections. It was not until November 22, 1966, after Surrogate DiFalco's decision favorable to Wolder became final, that he received the $15,845 representing the cash from the sale of the Schering convertible preferred that took place prior

the parties in that appeal. No further reference to the substance of that appeal will be made herein.

3. Subsequently another surrogate held that the estate would not be obligated under the

so-called tax clause in Mrs. Boyce's will to reimburse Mr. Wolder for any income tax payable by him by reason of the bequest made to him in accordance with the 1947 contract.

to Mrs. Boyce's death. The fair market value of the Schering stock at the date of her death was $46,945.31; on January 13, 1966, it was $63,937.50. The Commissioner had evaluated the stock at $68,625, representing its value on February 2, 1966; the selection of a February date was apparently in turn based upon a letter by Mr. Wolder requesting a ruling in which he stated that he received the stock in that month, but in which he plainly was mistaken.

Wolder argues that the legacy he received under Mrs. Boyce's will is specifically excluded from income by virtue of § 102(a), Int.Rev.Code of 1954, which provides that "Gross Income does not include the value of property acquired by gift, bequest, devise or inheritance . . . ." *See also* Treas.Reg. 1.-102–1(a). The individual taxpayer, as did dissenting Judge Quealy below, relies upon United States v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240 (1923), and its progeny for the proposition that the term "bequest" in § 102(a) has not been restricted so as to exclude bequests made on account of some consideration flowing from the beneficiary to the decedent. In *Merriam* the testator made cash bequests to certain persons who were named executors of the estate, and these bequests were " 'in lieu of all compensation or commissions to which they would otherwise be entitled as executors or trustees.' " 263 U.S. at 184, 44 S.Ct. at 70. The Court held nevertheless that the legacies were exempt from taxation, drawing a distinction—which in a day and age when we look to substance and not to form strikes us as of doubtful utility—between cases where "compensation [is] fixed by will for services to be rendered by the executor and [where] a legacy [is paid] to one

upon the implied condition that he shall clothe himself with the character of executor." 263 U.S. at 187, 44 S.Ct. at 71. In the former case, Mr. Justice Sutherland said, the executor "must perform the services to earn the compensation" while in the latter case "he need do no more than in good faith comply with the condition [that he be executor] in order to receive the bequest." The Court went on to take the view that the provision in the will that the bequest was in lieu of commissions was simply "an expression of the testator's will that the executor shall not receive statutory allowances for the services he may render." While the distinction drawn in the *Merriam* case hardly stands economic analysis, Bank of New York v. Helvering, 132 F.2d 773 (2d Cir. 1943), follows it on the basis that it is controlling law.[4]

But we think that *Merriam* is inapplicable to the facts of this case, for here there is no dispute but that the parties did contract for services and—while the services were limited in nature—there was also no question but that they were actually rendered. Thus the provisions of Mrs. Boyce's will, at least for federal tax purposes, went to satisfy her obligation under the contract. The contract in effect was one for the postponed payment of legal services, *i. e.*, by a legacy under the will for services rendered during the decedent's life.

■ Moreover, the Supreme Court itself has taken an entirely different viewpoint from *Merriam* when it comes to interpreting § 102(a), or its predecessor, § 22(b)(3), Int.Rev.Code of 1939, in reference to what are gifts. In Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), the Court held that the true test is whether

4. One also doubts the present day validity of the underlying philosophical premise of Merriam, that "If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer." 263 U.S. at 188, 44 S.Ct. at 71. In White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172 (1938), after noting for the majority that it was not "impressed"

by this very argument, Mr. Justice Stone said, "It is the function and duty of courts to resolve doubts. We know of no reason why that function should be abdicated in a tax case more than in any other where the rights of suitors turn on the construction of a statute and it is our duty to decide what that construction fairly should be."

in actuality the gift is a bona fide gift or simply a method for paying compensation. This question is resolved by an examination of the intent of the parties, the reasons for the transfer, and the parties' performance in accordance with their intentions—"what the basic reason for [the donor's] conduct was in fact— the dominant reason that explains his action in making the transfer." 363 U. S. at 286, 80 S.Ct. at 1197. *See also* Carrigan v. Commissioner, 197 F.2d 246 (2d Cir. 1952); Fisher v. Commissioner, 59 F.2d 192 (2d Cir. 1932). There are other cases holding testamentary transfers to be taxable compensation for services as opposed to tax-free bequests. Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959); Mariani v. Commissioner, 54 T.C. 135 (1970); Cohen v. United States, 241 F.Supp. 740 (E.D. Mich.1965); Davies v. Commissioner, 23 T.C. 524 (1954). True, in each of these cases the testator did not fulfill his contractual obligation to provide in his will for payment of services rendered by the taxpayer, forcing the taxpayers to litigate the merits of their claims against the estates, whereas in the case at bar the terms of the contract were carried out. This is a distinction without a difference, and while we could decline to follow them in the case at bar, we see no reason to do so.

 Indeed, it is to be recollected that § 102 is, after all, an exception to the basic provision in § 61(a) that "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including . . . (1) Compensation for services, including fees, commissions and similar items . . . . " The congressional purpose is to tax income comprehensively. Commissioner v. Jacobson, 336 U.S. 28, 49, 69 S.Ct. 358, 93 L.Ed. 477 (1949). A transfer in the form of a bequest was the method that the parties chose to compensate Mr. Wolder for his legal services, and that transfer is therefore subject to taxation, whatever its label whether by federal or by local law may be. *See also* Hort v. Commissioner,

313 U.S. 28, 31, 61 S.Ct. 757, 85 L.Ed. 1168 (1941).

Taxpayer's argument that he received the stock and cash as a "bequest" under New York law and the decisions of the surrogates is thus beside the point. New York law does, of course, control as to the extent of the taxpayer's legal rights to the property in question, but it does not control as to the characterization of the property for federal income tax purposes. United States v. Mitchell, 403 U.S. 190, 197, 91 S.Ct. 1763, 29 L. Ed.2d 406 (1971); Commissioner v. Duberstein, 363 U.S. at 285, 44 S.Ct. at 69; Morgan v. Commissioner, 309 U.S. 78, 80–81, 60 S.Ct. 424, 84 L.Ed. 585 (1940); Higt v. United States, 256 F.2d 795, 800 (2d Cir. 1958). New York law cannot be decisive on the question whether any given transfer is income under § 61(a) or is exempt under § 102(a) of the Code. We repeat, we see no difference between the transfer here made in the form of a bequest and the transfer under Commissioner v. Duberstein, *supra*, which was made without consideration, with no legal or moral obligation, and which was indeed a "common-law gift," but which was nevertheless held not to be a gift excludable under § 102(a).

██ ██ On the Commissioner's cross-appeal, there is no doubt that an item of gross income is generally included in the taxable year in which it is actually received, absent some method of accounting other than the cash method which Wolder used here. § 451(a), Int.Rev. Code of 1954. To tax income in a year other than in which it is actually received by a cash-basis taxpayer, it must be constructively received. Treas.Reg. § 1.451–1(a). We agree with the Commissioner that the Tax Court was in error in holding that Wolder "had the right and power to compel delivery" of the stock and cash during 1965. Wolder did in fact ask for the stock on two occasions in 1965, but that request was unsuccessful; he did not receive the stock until early 1966 and the cash until much later. The key inquiry, of course, is

whether or not in fact he had the stock readily available to him in 1965, that is, subject to his "unfettered command." Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930). He certainly was not in a position as one of two coexecutors, lacking possession of the securities which were in fact held by his coexecutor in a custodian account, to have them delivered to himself merely by his own say-so. Indeed he could not in fact achieve this result. Certainly it was open to the residuary legatees, as they subsequently did in February, 1966, to object to the distribution of the legacy. There is every reason to believe that his coexecutor may have been acting with some caution in not agreeing to make delivery until it did so in 1966. In any event, while there apparently were sufficient assets to satisfy the claims of creditors, there were reasons justifying the coexecutor's retention of the stock, without abusing its discretion. *Cf.* Hyland v. Commissioner, 175 F.2d 422, 423–424 (2d Cir. 1949). Under the regulations, which control the application of the doctrine in all instances, "income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." *See* Treas.Reg. § 1.-451–2(a). Until such time as the consent of the coexecutor was obtained to the transfer, and there is no indication whatsoever that such consent was obtained until January, 1966, the individual taxpayer was subject to "substantial limitations or restrictions." It is true, of course, that, since Ross v. Commissioner, 169 F.2d 483 (1st Cir. 1948), the doctrine of constructive receipt has been available to taxpayers as well as to the Commissioner. *See generally* 2 Mertens, Law of Federal Income Taxation § 10.-02. But here the basic test of construc-

tive receipt was not met: the income was not "unqualifiedly subject to the demand" of the cash basis taxpayer, to use Justice Frankfurter's phrase in *Ross,* 169 F.2d at 490. The date of the transfer of the stock to Wolder was, we hold, the date of his actual receipt of the certificates themselves, on or before January 25, 1966.[5]

■ The court having reached this result, Wolder argues that he is entitled to compute his tax liability for 1966 under the income averaging provisions of § 232(g)(2) of the Revenue Act of 1964, 78 Stat. 19, and § 1301 of the Code. This argument must fail because it is clear that Wolder was not employed by Mrs. Boyce to effect a *particular* result as required under § 1301(b) as it read prior to 1964. The definition published by the Commissioner under Treas.Reg. § 1.1301–2b(1)(iii), and the examples under 1.1301–2(b)(2), (1) & (2) (1962), make it evident that arrangements to render general legal services do not qualify for treatment under § 1301, Int.Rev. Code of 1954.

On the appeal by the Commissioner from the judgment of the Tax Court permitting the estate to deduct as a debt the sum of $15,845 in cash and $46,945.-31 representing the value at the date of death of the Schering stock, the Commissioner has conceded that the estate must prevail, the deduction being properly taken under § 2053(a), Int.Rev.Code of 1954. *See* note 2 *supra.*

Judgment in the appeal of Victor R. Wolder and Marjorie Wolder affirmed; judgment in the cross-appeal of the Commissioner reversed and remanded for proceedings consistent with this opinion; judgment in the case of Estate of Boyce et al. v. Commissioner affirmed.

---

5. On remand, the Tax Court will have to determine the precise date on which Wolder received the stock in order to establish Wolder's exact receipt of income from (and, incidentally, correct basis in) the stock, which is its fair market value on the day of delivery of the certificates to him, there being no evidence that Wolder received duly endorsed certificates and/or stock powers prior to delivery to the transfer agent. While this question is governed by New York law, *cf.* Ginsberg v. Commissioner, 305 F.2d 664, 668 (2d Cir. 1962) ; *see also* In re Ruszkowski's Estate, 45 Misc.2d 380, 256 N.Y.S.2d 983 (S.Ct.1965) ; New York Uniform Commercial Code § 8–309, the exact facts do not appear of record herein.