The E. R. HITCHCOCK CO.,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 507, Docket 74–2250.

United States Court of Appeals,
Second Circuit.

Argued Feb. 24, 1975.

Decided April 3, 1975.

Richard Farber, Washington, D. C. (Gilbert E. Andrews, William Friedlander, Attys., Tax Div., Dept. of Justice, Washington, D. C., Peter C. Dorsey, U. S. Atty., Scott P. Crampton, Asst. Atty. Gen.), for defendant-appellant.

Edward B. Scott, New Britain, Conn. (Camp, Williams & Richardson), New Britain, Conn., for plaintiff-appellee.

Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This appeal is by the Government from a judgment permitting a taxpayer, in connection with a condemnation award, the benefit of the nonrecognition provisions of the involuntary conversion statute, Section 1033 of the Code, 26 U.S.C. § 1033.[1] The judgment, a sum-

1. § 1033. Involuntary conversions.

(a) General rule.—If property (as a result of its . . . condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

.      .      .      .      .

(3) Conversion into money where disposition occurred after 1950.—Into money . . . and the disposition of the converted property . . . occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) Nonrecognition of gain.—If the taxpayer . . . for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the

mary one, was rendered by the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, *Judge,* and related to the taxable year 1966. In condemnation proceedings by a redevelopment authority the appellee, a corporation, had been awarded in that year under Connecticut law a total of $130,000. The award, made initially by a referee, was accepted on review by the Superior Court for Hartford County at New Britain. It included $90,000 for taxpayer's land and building and an additional $40,000 for moving its machinery and equipment. The taxpayer treated the entire condemnation award of $130,-000 as a nonseverable receipt in 1966, qualifying in its entirety for deferred recognition of gain under 26 U.S.C. § 1033. It did so on the basis of Connecticut law, exemplified by Andrews v. Cox, 127 Conn. 455, 17 A.2d 507 (1941). There the Connecticut Supreme Court held that condemnation damages include the costs of moving not as a separate item but as one element among "all those elements which an owner or a prospective customer could reasonably urge as affecting the fair market price of the land." 127 Conn. at 458, 17 A.2d at 510.[2]

The Government, however, sought to treat the $21,059.80 difference between the $40,000 award and the actual moving expenses of $18,940.20 as ordinary income, thereby resulting in additional tax owing of $10,108.71 together with $1,364.01 in interest, which the taxpayer paid. In a refund suit the court below held for the taxpayer. We affirm.

The taxpayer (upheld by the district court) contends that state law governs the "nature of the legal interest" which the taxpayer had in the amount awarded, *cf.* Morgan v. Commissioner, 309 U.S. 78, 82, 60 S.Ct. 424, 84 L.Ed. 585 (1940), and that under the state law, Andrews

v. Cox, *supra,* moving expenses are treated simply as an integral element of the fair market value of the land. *See also* Conn.Gen.Stat. 1958 §§ 8–129, 8–132. The theoretical basis for this proposition as set forth by the Connecticut Supreme Court is that "an owner would demand a higher price for a factory containing complicated and valuable machinery than he would for the same building idle and empty, because he would be faced with the necessity of moving his machinery to save it." Thus, "[h]is willingness to sell would be affected" and the moving expense would thereby "enter into the fixing of a fair market value." Harvey Textile Co. v. Hill, 135 Conn. 686, 689–90, 67 A.2d 851, 852–53 (1949). *See also* Del Vecchio v. New Haven Redevelopment Agency, 147 Conn. 362, 161 A.2d 190 (1960).

■ The Government argues, and we agree, that federal courts resolving federal tax disputes are not bound by labels or classifications affixed for state property law purposes. *See* Morgan v. Commissioner, 309 U.S. at 80–81, 60 S.Ct. 424. As we said in Wolder v. Commissioner, 493 F.2d 608, 612 (2d Cir.), cert. denied, 419 U.S. 828, 95 S.Ct. 49, 42 L.Ed.2d 53 (1974), while state law may control as to the extent of the taxpayer's legal rights to any property in question, "it does not control as to the characterization of the property for federal income tax purposes." *See also* United States v. Mitchell, 403 U.S. 190, 197, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971).

The Government then contends that under federal law, the court should break the condemnation award into its component parts, in order to determine tax consequences. *See* Vaira v. Commissioner, 444 F.2d 770, 774 (3d Cir. 1971) (condemnation award consisted of payment for property taken plus payment of

---

election of the taxpayer *the gain shall be recognized only to the extent that the amount realized upon such conversion* (regardless of whether such amount is received in one or more taxable years) *exceeds the cost of such other property* or such stock.

. . .
(Emphasis added.)

2. *See also* Del Vecchio v. New Haven Redevelopment Agency, 147 Conn. 362, 161 A.2d 190 (1960); Slavitt v. Ives, 163 Conn. 198, 303 A.2d 13 (1972).

severance damages to land not taken); A. B. Johnston, 42 T.C. 880 (1964). *See also* Kieselbach v. Commissioner, 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358 (1943) (interest on award).[3]

In fact, both parties seek to draw solace from the severance damage cases— the Government from Vaira v. Commissioner, *supra,* and the taxpayer from Conran v. United States, 322 F.Supp. 1055 (E.D.Mo.1971), followed in McKitrick v. United States, 373 F.Supp. 471 (S.D.Ohio 1974). Generally the Internal Revenue Service and the courts have said that if severance damages are not specifically set forth as a portion of the award either by contractual allocation or allocation in the award, the entire award is compensation for the property taken. Lapham v. United States, 178 F.2d 994 (2d Cir. 1950); Seaside Improvement Co. v. Commissioner, 105 F.2d 990, 994 (2d Cir.), cert. denied, 308 U.S. 619, 60 S.Ct. 263, 84 L.Ed. 516 (1939); Greene v. United States, 173 F.Supp. 868 (N.D.Ill.1959).[4] But where severance damages may be separated as a component, they have not been treated as compensation for the property taken. Rather they go to reduce the cost basis of the taxpayer's remaining property, Pioneer Real Estate Co., 47 B.T.A. 886 (1942); *see* Vaira v. Commissioner, 444 F.2d at 774 n. 6, and to the extent that that basis is exceeded there is a realized gain, *see also* Charlie Strugill Motor Co., 32 CCH Tax Ct.Mem. 1336 (1973), subject to capital gain and related limitations. 26 U.S.C. § 1231. *See* 3 Mertens, Law of Federal Income Taxation § 20.174 at 834 (1974); Rev. Rul. 271, 1953–2 Cum.Bull. 36. The decided cases have split on the question whether this gain is eligible for nonrecognition under § 1033. *Compare* Vaira v. Commissioner, *supra, with* Conran v. United States, *supra, and* McKitrick v. United States, *supra.*[5] And the Internal Revenue Service in at least two rulings has indicated approval of § 1033 treatment to severance damages, Rev.Rul. 271, 1953–2 Cum.Bull. 36 (expenditures to restore usability of damaged property); Rev.Rul. 240, 1969–1 Cum.Bull. 199 (expenditure to purchase adjacent farm land). It has done the same in respect to damages in the nature of severance damages. Rev.Rul. 433, 1972–2 Cum. Bull. 470 and Rev.Rul. 549, 1972–3 Cum. Bull. 472 (proceedings from involuntary grants of easements invested in qualified property). Perhaps this is because Section 1033 is "a relief provision enacted to allow a taxpayer to replace property involuntarily converted without paying the capital gains tax incident to other exchanges of property . . . [and as such] is to be construed liberally to achieve its purpose." John Richard Corp., 46 T.C. 41, 44 (1966).

But whatever the appropriate treatment of severance damages we are talking here about an amount attributed to moving expenses paid as a part of the award on condemnation. The sole ques-

---

**3.** *But see* Lapham v. United States, 178 F.2d 994 (2d Cir. 1950). In *Lapham* there was no allocation of any part of the price paid while condemnation was pending to severance damages, so that it appeared that "the appellant received the contract price as payment for the land deeded." *Id.* at 995. The court held that the taxpayer could not allocate part of the contract price to reduce the basis in her remaining land.

**4.** But the taxpayer has upon occasion been permitted to establish through evidence a separate component for severance damages even though no allocation was made in the contract. A. B. Johnston, 42 T.C. 880 (1964); L. A. Beeghly, 36 T.C. 154 (1961). *See* Rev.Rul. 183, 1964–1 Cum.Bull. 297. Not suprisingly, taxpayers have not always taken a consistent position since the desirability of deferral or immediate payment of taxes will vary from one taxpayer to another and from one situation or year to another. For the Government to take inconsistent positions, however, is something else again. *See generally* Comment, New Limitations on the Scope of Discretion of the Commissioner of Internal Revenue, 54 B.U.L. Rev. 425 (1974).

**5.** We do not read *Conran* and *McKitrick* as holding that any amount received in condemnation is received for the property taken or they would conflict with the separate-component concept the cases and rulings establish. Rather we read them as simply holding that severance damages in excess of basis will result in a "gain" on involuntary conversion under § 1033.

tion is whether this amount qualifies for § 1033 deferral recognition. Are such payments money into which the taxpayer's original property was "converted" within § 1033(a)(3)(A)? Is it, put another way, "gain . . . realized upon such conversion" within that section?[6]

Realistically, we think it is. Without relying upon the state law concept of a condemnation award including moving expense as a factor in fair market value, it is an economic fact that this taxpayer received its moving expense money solely as a result of the condemnation and as a matter of state law. Its original property was actually converted by the condemnation into a sum (or sums) of money which the taxpayer utilized, concededly, for qualified replacement property purchase. Economically and substantively, *see* Union Planters National Bank of Memphis v. United States, 426 F.2d 115, 118 (6th Cir.), cert. denied, 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970), this money received for moving expense was part of the "amount realized" on the conversion. But for the conversion it would not have been realized. It was not just an integral part of the state award, it was to compensate the taxpayer for the property taken. To view the moving expense money as a separate, unrelated payment out of the blue, so to speak, is to exalt form over substance. We say this noting parenthetically that in tax cases one man's substance may be another's form. While this decision is an *ipse dixit* in the sense that there is no specific authority supporting or contrary to it, we believe that it is not inconsistent either with the decided cases or the revenue rulings in respect to severance damages, moving expense or § 1033.

Judgment affirmed.

**6.** It is difficult to tell from our record whether, but we assume that, the District Director did consider that the entire amount paid was income against which a deduction for sums actually expended was allowed. This would be consistent with the general rule that the cost of moving machinery from one plant to another or one part of a plant to another is an ordinary and necessary business expense, deductible under 26 U.S.C. § 162, Eastern Shoe Mfg. Co., 8 B.T.A. 1169 (1927); MacAdam & Foster, Inc., 8 B.T.A. 967 (1927); Addresso-graph-Multigraph Corp., 4 CCH Tax Ct.Mem. 147 (1945), including moving in an eminent domain context. Electric Tachometer Corp., 37 T.C. 158 (1961). It would also be consistent with Rev.Rul. 279, 1960–2 Cum.Bull. 11. (We do not understand the District Director to suggest, however, that were taxpayer an individual, and this a business expense, he would not be entitled to capital gain treatment, 26 U.S.C. § 1231; cf. Rev.Rul. 217, 1953–2 Cum. Bull. 36 (severance damage excess). *Sed quaere.*)