ELIZABETH R. TIEFENBRUNN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ALAN ROESSLER AND VIRGINIA ROESSLER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5786–78, 5787–78.     Filed September 29, 1980.

*Frank W. Murphy*, for the petitioners.
*John O. Tannenbaum*, for the respondent.

## OPINION

RAUM, *Judge:*[1] The Commissioner determined deficiencies in petitioners' income taxes as set forth below:[2]

---

[1] These consolidated cases were originally submitted to Judge William H. Quealy. After Judge Quealy's retirement, the cases were reassigned to Judge Raum by order of the Chief Judge dated May 7, 1980.

[2] The notice of deficiency in the Roessler case (docket No. 5787–78) also contained a determination of a $152 deficiency for 1975, but petitioners have not sought review of that determination in this Court.

|  | *1971* | *1973* |
|---|---|---|
| Elizabeth R. Tiefenbrunn.................. | $7,397.09 | $3,303.97 |
| Alan Roessler and Virginia Roessler...................................... | 8,027.77 | 3,823.00 |

Petitioners Elizabeth Tiefenbrunn and Alan Roessler are two of the life income beneficiaries of the Carl Roessler Trust (the trust). The stipulation of the parties has already disposed of a number of matters in controversy, but the following two issues remain for decision: (1) Whether "interest" awarded the trust in 1971 pursuant to a judgment determining the amount of just compensation for the condemnation of the trust's property must be included in income, or whether it is part of the gain on the involuntary conversion of the property entitled to nonrecognition under section 1033, I.R.C. 1954; and (2) whether the trust is entitled to any deduction for depreciation on its real property under section 167(h), I.R.C. 1954. The case was submitted on a stipulation of facts.

Petitioners were residents of Connecticut at the time of the filing of their petitions herein.[3]

The Carl Roessler Trust is a simple testamentary trust created under a codicil to the Will of Carl Roessler, who died on October 18, 1956. Fred C. Roessler, the testator's son, and the First National Bank of New Haven, Conn., were the original trustees. Petitioners Elizabeth R. Tiefenbrunn and Alan Roessler, as well as Carl F. Roessler, grandchildren of the testator, are the life income beneficiaries of the trust.

At the time of the creation of the trust, its corpus consisted of a commercial building known as 185 Church Street, situated in the central business district of New Haven, Conn. The trust provided for no distributions from either corpus or net income for its first 10 years of operation. Instead, a $25,000 "reserve fund" was to be accumulated to pay for "any extraordinary expense or capital improvements," and during the first 10 years of the trust any remaining net income of the trust was to be

---

[3]Joint returns were filed by petitioner and her husband in the Tiefenbrunn case for both years in controversy, but the determination of deficiency before us for 1971 was addressed solely to the wife, and although the determination for 1973 was addressed to both spouses, only the wife filed the petition herein. Joint returns were filed for both years in the Roessler case, and both spouses filed the petition herein in respect of the determination of deficiency, which was addressed to both of them.

used to reduce the principal balance due on the mortgage loan outstanding with respect to the property.[4] The $25,000 reserve for depreciation was accumulated in full prior to the beginning of the 1967 taxable year. The trustees were also given authority to "pay the regular expenses in the ordinary manner."

Income distributions to the beneficiaries were to commence after 10 years. The grandchildren, if living, were to receive equal shares of any accumulated income, and were thereafter to receive annually equal shares of the income of the trust after the payment of taxes, "operational expenses," and principal and interest due on mortgage loans. Upon the expiration of 50 years from the testator's death, the trust principal and any income were to be distributed to the testator's surviving grandchildren. If any of the grandchildren died prior to the dissolution of the trust, their children were to take their parent's share of income or corpus by right of representation; if any deceased grandchild had remained unmarried, his share was to pass equally to the other surviving grandchildren.

On September 28, 1968, the trust's real property was taken by condemnation by the New Haven Redevelopment Agency, which deposited $1,060,000 for the use of the trust. On September 30, 1968, the trust moved for judicial review of the condemnation award, which is known as the Statement of Compensation. On November 18, 1970, the Redevelopment Agency unilaterally increased its award to $1,578,000, and made an additional deposit of $518,000 for the use of the trust.

The Superior Court, New Haven, Conn., by judgment rendered June 17, 1971, increased the condemnation award to $1,700,000. It also provided for total interest in the amount of $103,912.76 to be paid to the trust by the Redevelopment Agency. The specific elements of the judgment were itemized by the court as follows:

---

[4]Par. (e)(5) of the codicil to the testator's will reads in relevant part as follows:

"5. That for a period of ten years the trust will make no distribution from either the corpus of the estate or net income. A reserve fund is to be set up to the amount of $25,000.00. These funds will be built up at the rate of $5,000.00 or that proportionate amount not to exceed $5,000.00 each year until such time as the trust has an aggregate amount of $25,000.00 in reserve. This amount is to be maintained at this level for the life of the trust, to be used as a basis for paying any extraordinary expense or capital improvements. Any funds which shall accrue over and above that required for the payment of operational expenses, principal and interest on the mortgage, State and Federal and local taxes, during the said ten year period shall be applied to reduce the outstanding balance on principal of said mortgage."

WHEREUPON, it is adjudged that the Defendant pay to the Plaintiff the amount of the deficiency in the sum of $122,000; interest on the additional deposit of $518,000 from September 30, 1968 to June 15, 1971; and interest on $122,000 from September 30, 1968 to the date of payment of said deficiency; and costs taxes [sic] at $10,053.00, which costs include * * * appraisal fees in the amount of $9,440.

The testator's will did not provide for the disposition of the trust property, except on termination of the trust. After the initiation of condemnation proceedings by the Redevelopment Agency, the trustees sought court instructions as to their obligations subsequent to the taking of the trust's real property. By a memorandum of decision dated December 18, 1969, the Superior Court, New Haven, Conn., granted the trustees permission to reinvest the condemnation award funds in other real estate and capital improvements thereto. The trust, on December 29, 1969, purchased land and a building in Woodbridge, Conn., at a total cost of $270,000. Subsequent to the ultimate conclusion of judicial proceedings to determine the amount of compensation for the taking of the trust property, the trust purchased two additional replacement properties. On August 29, 1972, the trust purchased land, building, and equipment in Norwich, Conn., at a total cost of $758,865. Thereafter, on December 28, 1972, it completed its reinvestment program by purchasing land and a building in Colonie, N.Y., at a total cost of $1,184,327.

The trust, a cash basis taxpayer, filed fiduciary income tax returns for taxable years 1971 and 1973. Although the trust reported interest income on its 1971 return in the amount of $3,399.26, no amount was included as interest income in respect of the receipt of the proceeds from the condemnation of trust property. The Commissioner determined that $103,912.76 of the amount received on the condemnation of the trust property was interest income to the trust, and increased the petitioners' respective shares of distributable net income from the trust in accordance with this determination. The trust's 1971 return claimed a deduction of $9,504 for depreciation of property purchased by the trust to replace the property taken by condemnation. A similar depreciation deduction in the amount of $7,514.11 was claimed by the trust on its 1973 return. The Commissioner determined that the trust itself was not entitled to any deduction for depreciation in 1971 or 1973, and made allegedly corresponding adjustments to petitioners' respective

shares of distributable net income from the trust and allowable depreciation on property held by the trust.

(1) *"Interest" on condemnation award.*—Section 1033, I.R.C. 1954,[5] permits nonrecognition of gain on the involuntary conversion of property to the extent that the amount realized on the conversion is utilized to purchase property similar in use to the converted property. It is not disputed that the trust purchased replacement property with a cost in excess of the amount of the condemnation award. However, section 1033 is applicable to provide nonrecognition only of "gain" on the involuntary conversion of "property * * * into money or * * * [other] property." If the condemnation award includes amounts other than compensation for the value of the condemned property, such amounts do not qualify under the nonrecognition of gain provisions of section 1033. See *Graphic Press, Inc. v. Commissioner*, 523 F.2d 585, 588 (9th Cir. 1975), revg. 60 T.C. 674 (1973);

---

[5] As in effect with respect to conversions of property prior to Dec. 30, 1969, and prior to its amendment by sec. 1901(a)(128), Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, and by sec. 915(a), Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487, sec. 1033 provided in relevant part as follows:

SEC. 1033. INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If property (as a result of its * * * condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

* * * * * * *

(2) * * * For purposes of this paragraph and paragraph (3), the term "disposition of the converted property" means the destruction, theft, seizure, requisition, or condemnation of the converted property, or the sale or exchange of such property under threat or imminence of requisition or condemnation. * * *

(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money * * * and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) NONRECOGNITION OF GAIN.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, * * * at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. * * *

* * * * * * *

(B) PERIOD WITHIN WHICH PROPERTY MUST BE REPLACED.—The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending—

(i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

(ii) * * * at the close of such later date as the Secretary * * * may designate on application by the taxpayer. * * *

*Asjes v. Commissioner,* 74 T.C. 1005, 1010-1011 (1980). The condemnation award the trust received pursuant to the judgment of the Connecticut Superior Court included $103,912.76 in "interest," and we must determine whether this amount is part of the gain qualifying for nonrecognition under section 1033.

Petitioners argue that under Connecticut law, "interest" on the value of the condemned property from the date of the taking until the date of payment is an essential element of the constitutionally required just compensation for property taken by eminent domain. Since the "interest" was a part of the just compensation for the converted property, and would not have been received but for the involuntary conversion of the trust's property, petitioners argue that it was part of the "gain" on the conversion eligible for nonrecognition under section 1033.

The Government does not challenge petitioners' claim that the "interest" was part of the just compensation to which the trust was entitled under Connecticut law. However, the Government contends that State law is not controlling as to the income tax consequences of the receipt of the "interest," and that interest received as part of a condemnation award is properly taxable as ordinary income, not as gain from the sale of property. We agree with the Government.

The Supreme Court's decision in *Kieselbach v. Commissioner,* 317 U.S. 399 (1943), a case with facts almost identical to those presented herein, points the way to our decision here. In *Kieselbach,* property owned by the taxpayer was condemned by the city of New York. New York law provided that title vested in the city as of the date of entry of the condemnation order. However, if full payment for the property was not made on that date, the Greater New York Charter required that the just compensation paid the property owners include interest on the value of the property from the date of the taking until the date of payment. 317 U.S. at 400–401. In holding that the interest component of the condemnation award received by the taxpayers was ordinary income, and not part of the sales price of a capital asset, the Court stated (317 U.S. at 403):

The sum paid these taxpayers above the award * * * was paid because of the failure to put the award in the taxpayers' hands on the day * * * when the property was taken. This additional payment was necessary to give the owner the full equivalent of the value of the property at the time it was taken. Whether one calls it interest on the value or payments to meet the constitutional requirement of just compensation is immaterial. It is income

* * * paid to the taxpayers in lieu of what they might have earned on the sum found to be the value of the property on the day the property was taken. It is not a capital gain upon an asset sold * * *

Accord, *Filippini v. United States*, 318 F.2d 841, 844 n. 2 (9th Cir.), cert. denied 375 U.S. 922 (1963), affg. 200 F. Supp. 286, 289 (N.D. Cal. 1961); *Isaac G. Johnson & Co. v. United States*, 149 F.2d 851, 852 (2d Cir. 1945); *Smith v. Commissioner*, 59 T.C. 107, 111 (1972); see *320 E. 47th St. Corp. v. Commissioner*, 26 T.C. 545, 547 (1956), revd. on other grounds 243 F.2d 894 (2d Cir. 1957).

Petitioners correctly note that *Kieselbach* did not decide the precise question presented herein, whether interest paid as part of a condemnation award is part of the "gain" from the conversion of "property * * * into money" qualifying under section 1033. Petitioners argue that section 1033 is a broad relief provision that should be construed to provide nonrecognition for *all* gains arising from the involuntary conversion of property, and that we should not divide a condemnation award into its component parts. To the extent that *Kieselbach* is applicable, petitioners urge that it be reexamined. We do not find petitioners' arguments persuasive, and it is certainly not a legitimate function of a lower court to "reexamine" a decision of the Supreme Court. We hold that the interest portion of the condemnation award is properly classifiable as taxable income in the hands of the trust and is consequently taxable to petitioners, income beneficiaries, in 1971.[6]

The principal difficulty with petitioners' arguments is the language of section 1033. Section 1033 provides nonrecognition treatment only for "gain" from the involuntary conversion of "property * * * into money." The statute does not afford nonrecognition of all gains—instead, it provides nonrecognition treatment only for gains from the conversion of *property*. *Kieselbach* makes it clear that the interest component of a condemnation award is not gain derived from the property itself, but rather is compensation for the delay in payment of the sale price. See *Kieselbach v. Commissioner*, 317 U.S. at 404. To be sure, the trust would not have realized the interest income involved herein but for the condemnation of its property, but it

---

[6]Petitioners have not contended that the interest on the condemnation award was not an amount required to be distributed to them as income beneficiaries in 1971. See sec. 652(a), I.R.C. 1954.

would have received no interest income at all if full payment for the property had been made on the date of the condemnation. The delay in payment, not the condemnation, was the reason the trust received the "interest."

Petitioners further argue that we are precluded from dividing the condemnation award into its component parts by *E. R. Hitchcock Co. v. United States*, 514 F.2d 484 (2d Cir. 1975), and other cases. See *Graphic Press v. Commissioner*, 523 F.2d at 585; *McKitrick v. United States*, 373 F. Supp. 471 (S.D. Ohio 1974); *Conran v. United States*, 322 F. Supp. 1055 (E.D. Mo. 1971). See also *Buffalo Wire Works Co. v. Commissioner*, 74 T.C. 925 (1980). We do not read the Second Circuit's opinion in *E. R. Hitchcock Co.*, or the other cases cited by petitioners, to require nonrecognition of the interest income received on the condemnation award.

In *E. R. Hitchcock Co.*, the taxpayer received a condemnation award including an amount to compensate the taxpayer for the costs of moving the machinery and equipment in the condemned property. The taxpayer used the entire award to purchase qualified replacement property but the Commissioner sought to tax the difference between the taxpayer's actual moving expenses and the moving expense portion of the award as ordinary income. The Court of Appeals concluded that the award of moving expenses was part of the money into which the taxpayer's property was converted. To be sure, the court first noted that State law was not controlling as to the Federal tax characterization of the condemnation award, and that the fact that moving expenses were considered as part of the value of the condemned property under Connecticut law was not dispositive. 514 F.2d at 485. But it noted that the theoretical basis for awarding moving expenses under Connecticut law is that " 'an owner would demand a higher price for a factory containing complicated and valuable machinery than he would for the same building idle and empty, because he would be faced with the necessity of moving his machinery to save it,' " and that therefore the " 'moving expense would enter into the fixing of a fair market value,' " 514 F.2d at 485. In explaining the reasoning for concluding that the moving expense portion of the award was part of the payment for the property, the court stated (514 F.2d at 487):

Without relying upon the state law concept of a condemnation award including moving expense as a factor in fair market value, it is an economic fact that this

taxpayer received its moving expense money solely as a result of the condemnation and as a matter of state law. Its original property was actually converted by the condemnation into a sum (or sums) of money which the taxpayer utilized, concededly, for qualified replacement property purchase. Economically and substantively * * * this money received for moving expense was part of the "amount realized" on the conversion. But for the conversion it would not have been realized. *It was not just an integral part of the state award, it was to compensate the taxpayer for the property taken.* To view the moving expense money as a separate, unrelated payment out of the blue, so to speak, is to exalt form over substance. [Emphasis supplied.]

The Second Circuit's opinion in *E. R. Hitchcock Co.* does not preclude separation of a condemnation award into its component parts. The court explicitly recognized that a sum does not automatically qualify for section 1033 treatment merely because it is part of a condemnation award under State law. The court simply found that the moving expense payments were in substance part of the payment for the condemned property. Here, it is clear that the "interest" was not a payment for the property condemned, and we do not read the opinion of the Court of Appeals as precluding the current taxation of such sums. See *Graphic Press, Inc. v. Commissioner*, 523 F.2d at 588–589 & n. 3; see also *E. R. Hitchcock Co. v. United States*, 382 F. Supp. 236, 240 (D. Conn. 1974), affd. 514 F.2d 484 (2d Cir. 1975).

(2) *Depreciation.*—With respect to property held in trust, section 167(h), I.R.C. 1954,[7] sets forth the applicable rules for the allocation of depreciation deductions between the trustee and the beneficiaries. As interpreted by the regulations,[8] section

---

[7]Sec. 167(h), I.R.C. 1954, provides in relevant part as follows:

(h) LIFE TENANTS AND BENEFICIARIES OF TRUSTS AND ESTATES.—In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust, the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

[8]Sec. 1.167(h)–1(b), Income Tax Regs., provides as follows:

(b) *Trusts.* If property is held in trust, the allowable deduction is to be apportioned between the income beneficiaries and the trustee on the basis of the trust income allocable to each, unless the governing instrument (or local law) requires or permits the trustee to maintain a reserve for depreciation in any amount. In the latter case, the deduction is first allocated to the trustee to the extent that income is set aside for a depreciation reserve, and any part of the deduction in excess of the income set aside for the reserve shall be apportioned between the income beneficiaries and the trustee on the basis of the trust income (in excess of the income set aside for the reserve) allocable to each. For example:

167(h) provides that the deduction is to be apportioned between the trustees and the beneficiaries in accordance with the trust income allocable to each, unless local law or the trust instrument requires or allows the trustee to establish a reserve for depreciation; if a reserve is established, the deduction is allocated to the trustee to the extent of the income reserved. See generally *Dusek v. Commissioner*, 376 F.2d 410, 412–413 (10th Cir. 1967), affg. 45 T.C. 355 (1966).

Petitioners argue that the testator's will and Connecticut law permitted the trustees to establish a depreciation reserve with respect to the properties acquired after the condemnation of 185 Church Street; they accordingly contend that the trust is entitled to depreciation deductions in 1971 and 1973. Although not explicitly articulated by petitioners, the apparent purpose of their contention is to establish that the distributable income of the trust is reduced by the amount of the depreciation deduction with the consequence that their allocable shares of such income are correspondingly reduced.[9] The Government claims that the testator's will requires the distribution of all current income, and does not permit the trust to establish any reserves beyond the $25,000 "reserve fund" accumulated prior to the taxable years involved herein. The Government thus maintains that all allowable depreciation for the years involved must be allocated to the beneficiaries and not to the trust.[10] Both parties have

---

(1) If under the trust instrument or local law the income of a trust computed without regard to depreciation is to be distributed to a named beneficiary, the beneficiary is entitled to the deduction to the exclusion of the trustee.

(2) If under the trust instrument or local law the income of a trust is to be distributed to a named beneficiary, but the trustee is directed to maintain a reserve for depreciation in any amount, the deduction is allowed to the trustee (except to the extent that income set aside for the reserve is less than the allowable deduction). The same result would follow if the trustee sets aside income for a depreciation reserve pursuant to discretionary authority to do so in the governing instrument.

No effect shall be given to any allocation of the depreciation deduction which gives any beneficiary or the trustee a share of such deduction greater than his pro rata share of the trust income, irrespective of any provisions in the trust instrument, except as otherwise provided in this paragraph when the trust instrument or local law requires or permits the trustee to maintain a reserve for depreciation.

[9]Apart from the confusing manner in which depreciation was treated in the trust's returns (see n. 11 *infra*), the record is exasperatingly silent as to how the trustees in fact accounted for depreciation and as to the amounts of income which they in fact distributed to the beneficiaries.

[10]However, as will be noted *infra*, if the trust is not entitled to the depreciation deduction and the income of the trust is distributable to the beneficiaries without diminution on account of

proceeded as if the trust's, and not petitioners', tax liability were at issue herein. From our examination of the materials available, we have concluded that petitioners, and not the trust, are entitled to deduct the depreciation on the trust's property.

The testator's will requires that a $25,000 reserve be established for "paying any extraordinary expense or capital improvements" prior to the commencement of income distributions to the beneficiaries, and this reserve had been accumulated in full prior to the beginning of the 1967 taxable year. The will does not call for any other reserve, for depreciation or any other purpose; instead, it mandates the distribution of the "remaining income" after payment of "principal and interest on mortgages, operational expenses, State, City and Federal taxes."

Based upon our examination of the foregoing provisions and the testator's will as a whole, we conclude that the testator did not intend the trust to accumulate any reserve for depreciation or any other purpose beyond those specifically provided in the will. Had he intended the creation of an additional reserve for depreciation, it seems likely that he would have so stated, given the specificity of his directions for the $25,000 reserve for "extraordinary expense or capital improvements." Moreover, since the testator's grandchildren were both the income beneficiaries and remaindermen under the trust, it would not have been unreasonable for the testator not to provide for the establishment of a depreciation reserve by the trust; if the remaindermen wished to accumulate funds to provide for the ultimate replacement of the building owned by the trust, they had discretion to do so because they were receiving the income from the trust. The testator thus might have thought that provision of a reserve for depreciation was best left to the judgment of the beneficiaries.[11]

---

that deduction, petitioners, themselves, as beneficiaries would be entitled to the deduction (sec. 1.167(h)–1(b), particularly example (1), Income Tax Regs., n. 8 *supra*), and the ultimate result in favor of petitioners would appear to be the same regardless of whether depreciation is deductible by the trust or by the beneficiaries.

[11]The record is in confusion as to the trustees' understanding with respect to a depreciation reserve. There is no evidence as to how they kept their books of account in this connection, and their treatment of depreciation in their returns did not follow a consistent pattern. In their 1971 return, they claimed a depreciation deduction of $9,504, the total amount of depreciation allegedly sustained in that year. In 1973 and 1974, allowable depreciation shown on the trust's returns amounted to $40,942. However, the only deduction for depreciation taken by the trust in 1973 was $7,514.11; and in 1974, the trust took no deduction for depreciation. The reasons, if any, for such disparate treatment are unexplained.

Furthermore, even if the testator's will contained no inferences as to his intent with respect to reserves for depreciation and other purposes, it is doubtful that a trustee would be permitted to establish a reserve for depreciation under Connecticut law, at least where the income beneficiaries and remaindermen are the same. The relevant Connecticut statutes provide that trust "income" includes "*All* receipts of money * * * paid * * * as rent of realty." (Emphasis added.) Conn. Gen. Stat. Ann. sec. 45–112(1) (West 1960). Although the statutes also provide for the payment of "ordinary expenses incurred in connection with the trust estate" out of income, depreciation is not mentioned as such an expense. Conn. Gen. Stat. Ann. sec. 45–119(1) (West 1960). While statutes in many States now permit trustees to provide an allowance for depreciation in determining trust income,[12] this has not been the practice of most trustees in the absence of statutory provisions,[13] and we think the Connecticut statutes cannot fairly be read to permit such an allowance in the circumstances of this case. We accordingly hold that each individual income beneficiary, and not the trust, is entitled to a deduction for depreciation in respect of the property held by the trust.

In reaching our conclusion as to this issue, we must emphasize that this is the only issue argued by the parties in respect of the Commissioner's adjustments in the deficiency notices relating to depreciation. However, the deficiency notices are distressingly vague as to the precise effect resolution of this issue will have on petitioners' taxable income. Since the trust is stipulated to be a "simple testamentary trust," any depreciation deducted by the trust serves to reduce petitioners' shares of distributable net income from the trust. If the depreciation deductions are allocated in full to the beneficiaries, their shares of the trust's distributable net income are correspondingly increased, but they themselves will then be entitled to deductions for depreciation (sec. 1.167(h)–1(b), Income Tax Regs.), and those depreciation deductions will offset the increase in their shares of distributable income dollar for dollar. See secs. 651–652, I.R.C. 1954;

---

[12]See Uniform Principal and Income Act sec. 13 (1962 rev.), which has been adopted in 22 States. See 7A Uniform Laws Ann. 24 (West Supp. 1980).

[13]See 3 A. Scott, Trusts sec. 239.4 (3d ed. 1967); C. Dalton, "Buildings Held in Trust," 106 Trusts & Estates 1125 (1967); cf. *Edgar v. Commissioner*, 56 T.C. 717, 752–753 (1971).

*Kearney v. United States,* 116 F. Supp. 922, 925 (S.D. N.Y. 1953); M. Knuthe, "Depreciation & Depletion," 114 Trusts & Estates 146, 178 (1975). Thus, it would appear that there should not be any deficiency arising from this issue.

The entire matter may well be merely another instance of the familiar tempest in a teapot. However, in view of the confused state of the record in respect of this issue and in view of the fact that the parties have fully briefed and treated the maintenance of a depreciation reserve as the only matter to be decided, we have considered the testator's will and Connecticut law and have concluded that the beneficiaries, and not the trust, are entitled to the entire deduction for depreciation. Unless something has eluded us in this foggy record, the upshot, of course, would appear to be that there should not be any deficiency against petitioners in respect of the depreciation deductions. No issue has been presented to us for decision in respect of any other matter relating to depreciation—e.g., basis, useful life, etc.

Appropriate adjustments in petitioners' shares of trust income and deductions for depreciation, as well as other adjustments necessitated by the settlement of certain disputed issues, will be reflected in the

*Decisions to be entered under Rule 155.*