**GRAPHIC PRESS, INC.,
Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 73–3521.

United States Court of Appeals, Ninth Circuit.

Sept. 19, 1975.

Anthony R. Case (argued), Los Angeles, Cal., for petitioner-appellant.

Jonathan S. Cohen (argued), U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

## OPINION

Before TRASK and WALLACE, Circuit Judges, and KELLEHER,* District Judge.

WALLACE, Circuit Judge:

Graphic Press, Inc. (Graphic) appeals from a decision of the United States Tax Court upholding an income tax deficiency of $188,248 for the short taxable period July 1 to December 6, 1967. The Tax Court held, with six judges dissenting, that $407,192 of a $725,000 condemnation award from the State of California was not compensation for "property" within the meaning of Internal Revenue Code section 1033.[1] *Graphic Press, Inc.,* 60 T.C. 674 (1973). As such, the taxpayer was not entitled to defer recognition of gain on this amount as an involuntary conversion under section 1033. We reverse.

Graphic is a California corporation engaged in the lithography business in Los Angeles. It prints financial reports for major corporations and does general color advertising. In December, 1966, Graphic was notified that the state intended to acquire its place of business in order to widen the San Bernardino Freeway. Graphic's plant contained massive printing presses and other machinery worth $915,060. Under California law, these machines were classified as fixtures and the state was obligated to include such machinery in a condemnation of the land and building. Cal.Code of Civ.Pro. § 1248; *City of Los Angeles v.*

*Klinker,* 219 Cal. 198, 205–10, 25 P.2d 826, 829–31 (1933). It was the state's experience that if sold at auction, such large machinery would bring only 10% of its appraised value. Accordingly, the state sought Graphic's agreement to retain and move the machinery rather than require the state to purchase it. Graphic hired professional appraisers to value the land and building, to estimate the costs of moving its machinery to a new location and to appraise the business interruption costs involved in the move. These estimates were discussed as a basis for settlement during the ensuing negotiations.

Mindful of a one-year delivery time on new machinery, Graphic advised the state's acquisition agent in March, 1967, that it would require a condemnation of all existing machinery unless an acceptable settlement could be arranged shortly. Accordingly, the agent submitted for state approval a $725,000 settlement which was based upon an allowance of $282,500 for the land and building, $35,308 for non-removable improvements and $407,192 for relocation costs. A substantial portion of this latter figure was due to the cost of moving machinery ($138,500) and overhead expense during machine downtime ($248,692). The state approved the settlement and a form contract and grant deed were executed in June, 1967.

Under California law, the state could not reimburse a condemnee for moving expense in excess of $3,000 or for lost profits in any amount. Thus, the contract provided a lump-sum payment of

---

* Honorable Robert J. Kelleher, United States District Judge, Central District of California, sitting by designation.

1. Int.Rev.Code of 1954, § 1033 provides in part:

    (a) *General Rule.*—If property (as a result of its . . . condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

    \* \* \* \* \* \*

    (3) *Conversion into money where disposition occurred after 1950.*—Into money . . . and the disposition of the converted property . . . occurred after December 31,

1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

    (A) *Nonrecognition of gain.*—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, . . . at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property . . . . .

$725,000 for the property and improvements condemned. Additionally, it was provided that Graphic would retain and remove the machinery and equipment considered part of the realty, as specified in an exhibit to the contract, and would receive up to $3,000 for movement of personal property. Graphic did not agree to any breakdown of the $725,000 award.

Graphic argues that under California law, the entire award of $725,000 is a lump-sum payment constituting an "amount realized" on involuntarily converted property and cannot be broken down into separate components. The Tax Court recognized that California law did not permit an award for moving expense but determined that the award was separable in view of the preliminary negotiations which set a value of only $317,808 for the actual property taken. It labeled the excess as compensation for Graphic's waiver of a statutory right to require condemnation of the total property.

■ We adopt the reasoning of the Tax Court in distinguishing a prior line of cases which held that a lump-sum award may not be rationalized after the fact into separate components. *Graphic Press, Inc., supra,* 60 T.C. at 679–81. The normal presumption is that the entire proceeds were given in consideration of the condemned property if the award specifies only a lump-sum payment. *Vaira v. Commissioner,* 444 F.2d 770, 776 (3d Cir. 1971). But where the lump-sum award is far in excess of any reasonable valuation of the property taken, the court may scrutinize the negotiations to find what, if any, separate components

are included in the payment. "The test to be applied is whether the condemnation proceedings, including negotiations by way of settlement, clearly show that compensation for [a separate loss] was in fact included." *Id.* at 775.

■■ The Tax Court determined that only $317,808 was compensation for the property and the balance was compensation for a separate loss. There is sufficient evidence in the record to support a breakdown of the award[2] and we cannot say that the finding is clearly erroneous.

■ While a finding of separate awards is binding on us, the characterization of the excess compensation as a waiver transaction is not. The award is separable only if the taxpayer was compensated for losses other than the condemned property. Thus, the focus must necessarily be upon the items of condemnee's loss actually negotiated in the settlement. It is irrelevant that the state seeks and obtains a waiver of its obligation to purchase certain property if compensation is not expressly provided for such waiver. The state's right-of-way file reveals that the actual losses negotiated and compensated were moving expenses and business interruption costs. There was no evidence to indicate that any portion of the award was to pay for a waiver of the statutory right. Such a finding, then, is clearly erroneous.

■ The government contends that the separable part of the award attributable to moving expenses cannot be a payment for the property taken and is thus ineligible for section 1033 treatment. We disagree. In the only case

2. Graphic objected to introduction of the state's right-of-way file in the Tax Court to controvert the settlement contract. As noted above, the lump-sum contract creates only a rebuttable presumption that the entire proceeds were given in consideration of the condemned property; the court may look behind the contract to determine the underlying realities. Further, the parol evidence rule cannot preclude the Commissioner from separating form and substance in this case. The contract itself allowed Graphic to remove machinery the state was otherwise obligated to purchase, suggesting an element of compensation for the removal. There was also evidence that various elements of loss might be considered in determining the final condemnation award. That was sufficient to raise a suspicion that Graphic was compensated for losses separate from the property deeded to the state. The state file was admissible to show the actual losses compensated. *Cf. Lacy v. Commissioner,* 341 F.2d 54, 56–57 (10th Cir. 1965).

found dealing with moving expense as an element of a condemnation award, *E. R. Hitchcock Co. v. United States,* 514 F.2d 484 (2d Cir. 1975), a reimbursement for moving expense was treated as part of the "amount realized" on involuntary conversion under section 1033. The court reasoned that "[b]ut for the conversion [the moving expense money] would not have been realized." *Id.* at 487. While we are not inclined to follow a *but for* test in all circumstances,[3] the result in *Hitchcock* is helpful in deciding this case.

Section 1033 is a relief provision; its purpose is "to aid the taxpayer where he in good faith quickly transforms everything he received into property 'similar or related in . . . use.'" *Commissioner v. Babcock,* 259 F.2d 689, 692 (9th Cir. 1958) (interpreting predecessor to section 1033). *See also Winter Realty & Constr. Co. v. Commissioner,* 149 F.2d 567, 569–70 (2d Cir.), *cert denied* 326 U.S. 754, 66 S.Ct. 92, 90 L.Ed. 452 (1945). It is a legislative recognition that condemnation is not an appropriate time for recognition of gain if there has been no substantial change in form and productive use of an investment and appreciation has not resulted in liquid assets available to pay taxes. Accordingly, unless reimbursement is being made for lost profits, the cases have not scrutinized the source of condemnation proceeds as closely as the taxpayer's reinvestment.

We believe compensation in excess of land and building payments in this case qualifies for section 1033 treatment.[4] From the taxpayer's viewpoint, he is being compensated for a loss due to the condemnation of his property. Whatever payment the taxpayer receives is attributable to the involuntary conversion. Where, as here, a payment is made for relocation costs in addition to land and building costs, as long as the condemnee reinvests the total award into other property similar or related in service or use within the statutory period, both the language and spirit of the statute have been met.

Reversed.

---

**3.** For example, a *but for* test might allow deferment of an award for lost profits. Such an award should be currently taxed irrespective of reinvestment. *See Kieselbach v. Commissioner,* 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358 (1943) (interest component of award); *Shakertown Corp. v. Commissioner,* 277 F.2d 625, 628 (6th Cir. 1960) (dictum) (insurance proceeds for lost profits on involuntary conversion); Rev.Rul. 261, 1957–1 Cum.Bull. 262 (rent component of award). We need not face that question in this case because the Tax Court found no part of the award was due to lost profits. That finding is not clearly erroneous.

**4.** Compensation for a decrease in value of retained machinery is similar to severance damages paid for a value decrease in the retained portion of a condemnee's land. "Severance damages are compensation in addition to the award paid for the property actually condemned when the value of the retained property has decreased as a result of the condemnation." Rev.Rul. 35, 1973–1 Cum.Bull. 367. Severance damages have generally been held to qualify for nonrecognition under section 1033. *McKitrick v. United States,* 373 F.Supp. 471, 473 (S.D.Ohio 1974); *Conran v. United States,* 322 F.Supp. 1055, 1057–58 (E.D.Mo. 1971). *See also E. R. Hitchcock v. United States,* 514 F.2d 484, 486 (2d Cir. 1975); 3 J. Mertens, Law of Federal Income Taxation § 20.174, at 834 (1972).