BUFFALO WIRE WORKS COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5963–76.    Filed July 31, 1980.

*Emil L. Cohen,* for the petitioner.
*George W. Connelly,* for the respondent.

OPINION

GOFFE, *Judge:* The Commissioner determined deficiencies in the Federal income tax of petitioner as follows:

| Taxable year | Deficiency in tax |
| --- | --- |
| 1969 | $2,317 |
| 1970 | 2,317 |
| 1971 | 5,792 |
| 1972 | 187,345 |

Five issues are presented for our decision:

(1) Whether $418,052 was includable in the income of petitioner for the taxable year 1972 as ordinary income from the reimbursement of moving expenses;

(2) Whether $12,110 was includable in the income of petitioner for the taxable year 1972 as ordinary income from the excess reimbursement of moving expenses;

(3) Whether the moving expenses of petitioner for the taxable year 1972 should be disallowed because they were reimbursed during that same taxable year;

(4) Whether petitioner should include in its income for 1972 an amount equal to its claimed moving expense deductions for the taxable years 1965 through 1971 because such amounts were recovered during the taxable year 1972; and

(5) Whether petitioner correctly calculated its investment credit for the taxable year 1972 and its carryback of investment credit to the taxable years 1969, 1970, and 1971. Resolution of the fifth issue described above depends solely upon the resolution of the first four issues.

All of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Buffalo Wire Works Co., Inc. (hereinafter petitioner), is a corporation organized under the laws of the State of New York and at all times pertinent to this case has had its principal office

and place of business in Buffalo, N.Y. Petitioner, an accrual method taxpayer, filed its Federal income tax returns for the taxable years 1969, 1970, 1971, and 1972 with the Internal Revenue Service Center, Andover, Mass.

Petitioner owned the real property at 308–320 Lower Terrace, Buffalo, N.Y., and used that property as a principal place of business until Feburary 15, 1972. Such property (hereinafter the Lower Terrace property) consisted of land, buildings, and fixtures and was used by petitioner for the manufacture of wire and wire mesh products.

In 1954, the City Planning Commission of the City of Buffalo initiated Waterfront Redevelopment Project No. UR N.Y. R–35 (hereinafter the project). In 1956 or thereabouts, petitioner informally learned that the city of Buffalo intended to acquire a large tract of real property, of which the Lower Terrace property was a part, in connection with the project. During 1962, in anticipation of the condemnation of the Lower Terrace property, petitioner purchased a tract of land in West Seneca, N.Y., which was zoned for industrial use. Such property (hereinafter the West Seneca property) was intended as the site for a replacement facility, and petitioner hired an architectural and engineering firm to prepare plans for the construction of such a facility.

By letter dated January 20, 1967, the city of Buffalo offered petitioner $399,330 for the Lower Terrace property. Petitioner did not accept the offer. Therefore, by petition dated February 28, 1967, the city of Buffalo commenced condemnation proceedings in the New York State Supreme Court. On October 4, 1967, a preliminary order of condemnation was entered in which the court ordered that just compensation for the taking of the Lower Terrace property would be fixed and determined without submission to a jury.

Between September 10, 1968, and July 9, 1969, hearings were held to determine the value of the Lower Terrace property. By memorandum dated July 31, 1969, the court found that $195,000 would be just compensation for the land taken and that $440,000 would be just compensation for the buildings taken, but that there was insufficient evidence to determine the value of the fixtures which were to be removed or could be removed. For purposes of valuing such fixtures, the court directed the parties' attention to *Rose v. New York*, 24 N.Y.2d 80, 298 N.Y.S.2d 968

(1969), wherein the proper method of valuation was described. In short, that opinion requires that the value of fixtures which are removed or could be removed is usually to be determined as the lesser of these two values: (1) The difference between salvage value of such items and their present value in place (i.e., reproduction cost, less depreciation); or (2) the actual or contemplated costs of disassembly, trucking, and reassembling such items.

By memorandum dated December 10, 1969, the court made certain findings relative to the compensable value of the fixtures in place. First, the court determined that certain items were fixtures. Specifically, the court stated as follows:

> I find all the items, I believe 162, to be fixtures in the broad definition of the word and are moveable and come within the definition in the *Rose* case (24 N.Y.2d 80). That these items can be profitably removed to another location and used by the owner and that it would be inequitable to treat these items as personalty simply because of the possibility of removal at less than total destruction of the machine or the structure which houses it.

Also, the court found the sound value of the 162 fixtures in place to be $1,276,663, their salvage value to be $237,665, and the resulting difference to be $1,038,988.[1] Futher, the court found that certain items which were included as fixtures in place also had been included as part of the buildings for valuation purposes. To eliminate that duplication, the court deducted the value of those duplicate items, $62,175, from the value of the fixtures in place. Thus, the court determined that the value of fixtures in place for purposes of compensation in condemnation proceedings was at most $976,813.[2] However, referring to the *Rose* case again, the court pointed out that the fixtures in place were found to be movable and, therefore, the condemnation proceeds allocable to the fixtures in place were limited to the lower of $976,813 or the costs of disassembling, trucking, and moving them. Because there was insufficient evidence to determine the costs of disassembly, trucking, and reassembly, a hearing was set to obtain such evidence.

By order of judgment dated December 24, 1969, judgment was

---

[1]This amount reflects an error in subtraction. $1,276,663 − $237,665 = $1,038,998.

[2]This amount also reflects the subtraction error noted in n. 1 *supra;* $1,038,988 − $62,175 = $976,813; but $1,038,998 − $62,175 = $976,823.

entered in favor of Buffalo Wire Works Co., Inc., in accordance with the findings in the Memorandum dated December 10, 1969, with the proviso that the award for fixtures was subject to alteration. Specifically, Buffalo Wire Works Co., Inc., was awarded $635,000 for land and buildings and $976,813 for fixtures. The value of the fixtures was to be increased by any part of $178,605 that could be proved as expenses for carting, rigging, and installation of replacement fixtures. The value for fixtures so determined would constitute the award for fixtures unless the costs of moving, disassembling, trucking, reassembling, and relocating the existing fixtures were lower, in which case the award for fixtures would be the lower amount.

Further proceedings were held to determine the costs of moving disassembling, trucking, reassembling, and relocating the existing fixtures. Such proceedings were premised upon a move of petitioner's fixtures from the Lower Terrace property to the West Seneca property. Testimony was completed by September 11, 1970.

Due to changed circumstances between the date when petitioner acquired the West Seneca property and the end of 1970, petitioner decided to explore alternative relocation sites. Petitioner learned that a 24-year-old facility located at 1165 Clinton Street in Buffalo was available and decided to acquire that property (hereinafter the Clinton property).

In July 1971, petitioner formed 1165 Clinton Street, Inc., and on July 23, 1971, acquired all of its capital stock. In August 1971, 1165 Clinton Street, Inc., purchased the Clinton property for $800,000. On February 1, 1972, 1165 Clinton Street, Inc., was merged into petitioner. The parties agree that the Clinton property was acquired by petitioner during the period beginning with the earliest date of the threat or imminence of condemnation of the Lower Terrace property and ending within 2 years after 1972. The parties further agree that the Clinton property was acquired by petitioner to replace the Lower Terrace property and that the Clinton property is similar or related in service or use to the Lower Terrace property.

By memorandum dated December 1, 1971, the New York State Supreme Court made its findings concerning the costs of moving petitioner's fixtures from the Lower Terrace property to

the West Seneca property. The court determined that the costs of moving, disassembling, trucking, reassembling, and relocating the fixtures would be $480,744.87, which amount was the sum of the following nine components:

(1) The cost of motorizing and electrically preparing certain machinery for the purpose of moving was found to be $19,165;

(2) The cost of engineering services related to the relocation and layout of fixtures in the new plant was found to be $80,718;

(3) The cost of disconnecting and reconnecting pneumatic equipment was found to be $11,101.85;

(4) The cost of disconnecting and reconnecting the water supply was found to be $516;

(5) The cost of disconnecting and reconnecting the electrical system was found to be $12,871.02;

(6) The cost of rigging and trucking the fixtures, including the cost of making necessary wall openings, was found to be $274,229;

(7) The cost of moving raw materials, finished goods, stock, and miscellaneous items was found to be $39,750;

(8) The cost of restoring the machines to the same operating condition as existed before the move was found to be $39,394; and

(9) An additional award of $3,000 was included pursuant to N.Y. Civ. Prac. Law sec. 8303(a)(2) (Consol. 1963), because the court found the case to have been "difficult and extraordinary."

The foregoing amounts were determined on the basis of evidence submitted at hearings but are not awards of *actual* moving costs.

Thus, based upon the rule set forth in the *Rose* case, the court had determined that the value of fixtures in place as measured by their fair market value, less salvage value, was $976,813, but that the value of fixtures in place as measured by the contemplated cost of disassembling, trucking, and reassembling the fixtures was $480,744.87. Thus, the total condemnation award was as follows:

Value of land...................................... $195,000.00
Value of buildings................................ 440,000.00

Value of fixtures, not to exceed
costs of moving.................................... $480,744.87
Total............................................... 1,115,744.87

By resolution passed December 28, 1971, the Common Council of the City of Buffalo directed the Corporation Counsel of the City of Buffalo to apply to the New York State Supreme Court for a final decree of condemnation for the Lower Terrace property. Pursuant to such application, that court entered its judgment on February 1, 1972, awarding petitioner $1,115,744.87 (excluding costs and disbursements) as just compensation for the taking of the Lower Terrace property. Specifically, it was ordered, adjudged, and decreed that the just compensation to petitioner be $1,115,744.87, together with costs and disbursements in the amount of $22,042.47, subject to an adjustment of taxes on the property which had been paid in advance by petitioner. Also, it was ordered, adjudged, and decreed that, upon payments of the condemnation award to petitioner, the city of Buffalo be vested in title and fee simple to the real property which was the object of the condemnation proceedings.

Petitioner received checks totaling $1,141,072.45 as condemnation proceeds, which included a refund of taxes in the amount of $3,285.11, costs and disbursements in the amount of $22,042.47, and just compensation of $1,115,744.87. The parties agree that amounts received as a refund of taxes, which total #3,285.11, and amounts received as compensation for legal, engineering, and appraisal expenses, which total $139,438, do not constitute part of the amount realized by petitioner for purposes of section 1033, I.R.C. 1954.[3] Thus, the maximum amount realized by petitioner upon the conversion of its property was $998,349 (rounded to the nearest dollar), calculated as follows:

Gross award............................................... $1,141,072
  Less:
  Refund of property tax .................... $3,285
Legal, engineering, and
  appraisal expenses........................... 139,438    (142,723)
                                                           998,349

Petitioner made a timely election under section 1033 to

---

[3]All section references are to the Internal Revenue Code of 1954 as amended.

recognize gain from the involuntary conversion of its property only to the extent that the amount realized upon the conversion of the property exceeds the cost of the replacement property. Petitioner expended $1,060,734 for replacement property and reported no gain from the involuntary conversion of its property.

Petitioner claimed deductions for moving expenses which it incurred during the taxable years 1965 through 1972 in the following amounts:

| Taxable year | Amount |
|---|---|
| 1965 | $23,377.81 |
| 1966 | 11,863.57 |
| 1967 | 15,433.39 |
| 1968 | 14,387.62 |
| 1969 | 13,953.14 |
| 1970 | 0 |
| 1971 | 81,193.33 |
| 1972 | 257,842.52 |
| Total | 418,051.38 |

The expenses incurred during the taxable years 1965 through 1969, and $59,769 of those incurred during the taxable year 1971, were attributable to the planned move from the Lower Terrace property to the West Seneca property. The expenses incurred during the taxable year 1972, and $21,424.33 of those incurred during the taxable year 1971, were attributable to the actual move from the Lower Terrace property to the Clinton property. None of the amounts which petitioner incurred as moving expenses were included in the amount of $1,060,734 which petitioner expended for replacement property.

In his statutory notice of deficiency, the Commissioner determined that the amount of $418,052, which petitioner received as part of its condemnation award in 1972, constituted ordinary income to petitioner as a direct reimbursement of the moving expenses which had been incurred during and claimed as a deduction for the taxable years 1965 through 1972. The Commissioner determined further that petitioner received a net award of $430,162 as reimbursement for moving expenses, calculated as follows:

| | |
|---|---|
| Award for moving expenses | $480,745 |
| Portion allocable to legal, engineering, and appraisal expenses | (50,583) |
| Net award for moving expenses | 430,162 |

The Commissioner determined further that the difference of $12,110 between the amount of $418,052, which was received as a direct reimbursement of moving expenses, and the amount of $430,162, which was the net award, was not gain that qualifies for nonrecognition under section 1033 because it was not an award for condemned fixtures, and it did not represent an amount paid for property which could be replaced. Accordingly, petitioner's taxable income for the taxable year 1972 was increased, additional investment credit was allowed to petitioner for that year, and no carryback of investment credit to the taxable years 1969, 1970, or 1971 was allowed. The basis of the Clinton property was also determined.

A petition and answer having been filed in this case, respondent moved that he be allowed to file an amendment to his answer. Despite petitioner's objection, respondent's motion was granted. In the amendment to his answer, respondent set forth three additional grounds upon which a deficiency should be predicated. Respondent has abandoned one of those grounds but maintains the following two grounds. First, respondent notes that petitioner is an accrual method taxpayer which in 1972 incurred expenses for moving which were subject to reimbursement. As such, respondent argues that the expenses incurred are deductible under section 162 only to the extent that reimbursements are included in petitioner's income. Respondent reasons that none of the reimbursements were included in petitioner's income and, therefore, no deduction for moving expenses is allowable for the taxable year 1972. Second, under the "tax benefit rule," respondent would require petitioner to include in its income for 1972 an amount equal to its deductions for moving expenses which were taken for the taxable years 1965 through 1971 and recovered in 1972.

In summary, respondent has articulated three contentions:

(1) That $430,162 of the condemnation award constituted ordinary income to petitioner, part as reimbursement for moving expenses and part as excess reimbursement for moving expenses;

(2) That the moving expenses of petitioner for the taxable

year 1972 are deductible only to the same extent that the condemnation award is includable as ordinary income to petitioner in that year; and

(3) That petitioner must restore to income in 1972 the amounts that were deducted as moving expenses in the taxable years 1965 through 1971 because such amounts were recovered by petitioner through its condemnation award. By placing respondent's contentions side-by-side, it can be seen that each of the three contentions is premised on the same crucial determination, namely, that a portion of petitioner's condemnation award constituted reimbursement of moving expenses. Petitioner's sole contention is that no part of its condemnation award was received as reimbursement of moving expenses, but that the entire award (less refunded property tax, and legal, engineering, and appraisal expenses) constitutes an amount realized upon the involuntary conversion of property into money. Thus, the basic issue to be decided in this case is whether the portion of the condemnation award which totaled $480,744.87 should be treated for purposes of Federal income taxation as reimbursement of moving expenses or as money into which property has been converted.

A similar issue was presented in *Graphic Press, Inc. v. Commissioner*, 60 T.C. 674 (1973), revd. 523 F.2d 585 (9th Cir. 1975). There, the California Department of Public Works notified the taxpayer that the State of California intended to condemn the taxpayer's property in connection with the widening of the San Bernardino Freeway. The State condemned the taxpayer's land, building, and fixtures. Upon condemnation of the fixtures, which included extensive machinery, the State was obliged to pay the taxpayer an amount equal to the fair market value of the fixtures unless the State could negotiate some relief from that obligation. Negotiations produced a settlement under which the taxpayer agreed to waive its right to receive an amount equal to the fair market value of the fixtures and also agreed to remove the fixtures. Correspondingly, the State agreed to compensate the taxpayer for the land, building, and fixtures in the amount of $725,000, and for moving expenses in the amount of $3,000. The Commissioner determined that $407,192 of the $725,000 condemnation award, less an allocable portion of legal fees, constituted ordinary income rather than money into which property had been converted.

In a Court-reviewed opinion, this Court decided that $407,192 of the condemnation award, less an allocable portion of legal fees, was received by the taxpayer in exchange for its waiver of the right to be compensated for the fair market value of the fixtures. Accordingly, it was held that such amount, less an allocable portion of legal fees, was includable in the taxpayer's income. On appeal to the United States Court of Appeals for the Ninth Circuit, our decision was reversed.

In its opinion, the United States Court of Appeals for the Ninth Circuit agreed that sufficient evidence existed to support a breakdown of the condemnation award into component parts, but disagreed that part of the condemnation award constituted payment for a waiver. In so holding, the court explained as follows: "The state's right-of-way file reveals that the actual losses negotiated and compensated were moving expenses and business interruption costs. There was no evidence to indicate that any portion of the award was to pay for a waiver of the statutory right." (523 F.2d at 588). The court then turned to the Commissioner's argument that the portion of the condemnation award which was allocable to moving expenses was not a payment for the property taken. After referring to *E. R. Hitchcock Co. v. United States*, 514 F.2d 484 (2d Cir. 1975), affg. 382 F. Supp. 236 (D. Conn. 1974), and discussing generally section 1033, the court concluded as follows:

> We believe compensation in excess of land and building payments in this case qualifies for section 1033 treatment. From the taxpayer's viewpoint, he is being compensated for a loss due to the condemnation of his property. Whatever payment the taxpayer receives is attributable to the involuntary conversion. Where, as here, a payment is made for relocation costs in addition to land and building costs, as long as the condemnee reinvests the total award into other property similar or related in service or use within the statutory period, both the language and spirit of the statute have been met. [523 F.2d at 589; fn. ref. omitted.]

Under the rule of *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we will follow the views of the United States Court of Appeals to which a case is appealable when that court has already expressed its views on an issue which is presented to us for decision. 54 T.C. at 757. In the instant case, the issue presented for decision is materially the same as that presented for decision in *Graphic Press, Inc. v. Commissioner, supra.* However, appeal of our decision in this case would not be taken to the United States Court of Appeals

for the Ninth Circuit, which reversed our decision in *Graphic Press*. Instead, appeal of our decision herein would be taken to the United States Court of Appeals for the Second Circuit, which has also decided a case involving the same issue.

In *E. R. Hitchcock Co. v. United States*, 514 F.2d 484 (2d Cir. 1975), the Court of Appeals reviewed a decision by the United States District Court for Connecticut. On cross-motions for summary judgment, the District Court had been faced with the question whether amounts received in a condemnation proceeding for disassembling, moving, and reassembling machinery were part of the fair market value of the property taken and thus were amounts realized upon the conversion of property into money, or rather, were a separate reimbursable item of damages for purposes of taxation. After reviewing Connecticut law on the determination of fair market value of condemned property, the District Court held that the amounts attributable to the costs of moving were received by the taxpayer as part of the fair market value of the property taken. *E. R. Hitchcock Co. v. United States*, 382 F. Supp. 236, 241 (D. Conn. 1974).

On appeal, the United States Court of Appeals for the Second Circuit affirmed the decision of the District Court. In so doing, that court included the following statement:

Without relying upon the state law concept of a condemnation award including moving expense as a factor in fair market value, it is an economic fact that this taxpayer received its moving expense money solely as a result of the condemnation and as a matter of state law. Its original property was actually converted by the condemnation into a sum (or sums) of money which the taxpayer utilized, concededly, for qualified replacement property purchase. Economically and substantively, *see* Union Planters National Bank of Memphis v. United States, 426 F.2d 115, 118 (6th Cir.), cert. denied, 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970), this money received for moving expense was part of the "amount realized" on the conversion. But for the conversion it would not have been realized. It was not just an integral part of the state award, it was to compensate the taxpayer for the property taken. To view the moving expense money as a separate, unrelated payment out of the blue, so to speak, is to exalt form over substance. * * * [514 F.2d at 487.]

The court also noted that the deduction by the taxpayer of moving expenses was justified. 514 F.2d 487 n. 6.

Considering the rule of *Golsen v. Commissioner, supra*, the opinion of the Court of Appeals in *E. R. Hitchcock Co. v. United States, supra*, and the facts of the instant case, we are compelled to hold that the portion of petitioner's condemnation award

which was determined by reference to moving expenses constitutes an amount realized from the involuntary conversion of property into money rather than reimbursement for moving expenses. Accordingly, we hold that no part of petitioner's condemnation award constitutes ordinary income to petitioner as reimbursement for moving expenses or as excess reimbursement for moving expenses, that the moving expenses of petitioner for the taxable year 1972 are fully deductible in that year, and that petitioner need not restore to income amounts that were deducted as moving expenses in the taxable years 1965 through 1971.

Respondent contends that the instant case is distinguishable from *E. R. Hitchcock Co. v. United States*, 514 F.2d 484 (2d Cir. 1975), in two respects. First, respondent contends that the decision in *E. R. Hitchcock Co.* involved the application of Connecticut law, whereas, the instant case involves the application of New York law. Second, respondent argues that the decision in *E. R. Hitchcock Co.* resolved the taxability of an amount equal to the difference between actual moving expenses and the portion of the condemnation award which was measured by projected moving costs, whereas, the instant case must resolve the taxability of the entire portion of the condemnation award which was measured by projected moving costs. Because of those two distinctions, respondent argues that the rule of *Golsen v. Commissioner*, 54 T.C. 742 (1970), does not require us to reach the same result in this case as was reached in *E. R. Hitchcock Co.* We disagree.

There is not sufficient difference between the laws of Connecticut and New York to negate the applicability of *E. R. Hitchcock Co.* to the facts of this case. Under Connecticut law, the fixing of a condemnation award is done upon the basis of the fair market value of the property taken as of the day of the taking. See *E. R. Hitchcock Co. v. United States*, 382 F. Supp. at 238. The costs of moving fixtures are not taken into account separately, but rather as an element which affects the fair market value of the property. *Harvey Textile Co. v. Hill*, 135 Conn. 686, 689, 67 A.2d 851, 852 (1949). On the other hand, under New York law, the value of fixtures is determined as being the lower of two amounts: (1) The difference between their present value in place and their salvage value; and (2) the costs of disassembling, trucking, and reassembling the fixtures. *Rose v.*

*New York,* 24 N.Y.2d 80, 246 N.E.2d 735 (1969). Whichever amount is used, such amount becomes the value of fixtures which are removed or could be removed. Thus, as under Connecticut law, compensation is made from the value of the property taken. New York law is not different from Connecticut law in that respect; it is simply more definite than Connecticut law in the use of moving expense data. Nevertheless, in both States the use of moving expenses is as a measure of value, and it is upon that basis that the Court of Appeals made its decision in *E. R. Hitchcock Co.*[4]

The factual distinction that respondent perceives between the instant case and *E. R. Hitchcock Co.* is overcome by a footnote in the opinion of the Court of Appeals. Respondent points out that in the instant case the Commissioner determined that the entire portion of the condemnation award which was measured by moving expenses was included in petitioner's income in the year of receipt. Respondent also notes that in *E. R. Hitchcock Co.* the central issue was the includability in income of the difference between actual moving expenses and the portion of the condemnation award which was measured by projected moving expenses. The Court of Appeals anticipated such a distinction by pointing out that:

> It is difficult to tell from our record whether, but we assume that, the District Director did consider that the entire amount paid was income against which a deduction for sums actually expended was allowed. This would be consistent with the general rule that the cost of moving machinery from one plant to another or one part of a plant to another is an ordinary and necessary business expense, deductible under 26 U.S.C. sec. 162, Eastern Shoe Mfg. Co., 8 B.T.A. 1169 (1927); MacAdam & Foster, Inc., 8 B.T.A. 967 (1927); Addressograph-Multigraph Corp., 4 CCH Tax Ct. Mem. 147 (1945), including moving in an eminent domain context. Electric Tachometer Corp., 37 T.C. 158 (1961). * * * [514 F.2d at 487 n. 6.]

Respondent contends that if the decision of the United States Court of Appeals for the Second Circuit in *E. R. Hitchcock, Co.* is applied to the instant case, then he nevertheless should prevail on alternate grounds. Respondent argues that the tax benefit

---

[4]Moreover, under both laws, the language used in *E. R. Hitchcock Co. v. United States,* 514 F.2d 484 (2d Cir. 1975), affg. 382 F. Supp. 236 (D. Conn. 1974), by the United States Court of Appeals for the Second Circuit is broad enough to qualify condemnation proceeds which are measured by moving expenses as amounts realized upon the conversion of property into money. See 514 F.2d at 487.

rule should require the inclusion in petitioner's income of amounts which were recovered during the taxable year 1972 after being deducted in a previous taxable year. Respondent contends that amounts spent during the taxable year 1972 on moving expenses were spent with a right to reimbursement and, therefore, are not deductible. We disagree with both of the foregoing grounds.

With respect to respondent's argument under the tax benefit rule, we would point out the requirement that a taxpayer must make a recovery of an item which generated a deduction in an earlier taxable year. See sec. 111; sec. 1.111–1(a), Income Tax Regs.; *Spitalny v. United States*, 430 F.2d 195 (9th Cir. 1970). Respondent correctly points out that petitioner claimed deductions for moving expenses in taxable years prior to 1972 and that such deductions resulted in a tax saving to petitioner. However, because of our holding that all of the condemnation award is properly categorized as an amount realized from the involuntary conversion of property into money, no part of that condemnation award constitutes a recovery of prior moving expenses. Without such a recovery, respondent's argument under the tax benefit rule must fail. See sec. 1.111–1(a)(2), Income Tax Regs.

We must reach a similar result with respect to respondent's argument that amounts expended for moving expenses during the taxable year 1972 were spent with a right to reimbursement. No part of the condemnation award represents reimbursement of moving expenses. The amounts expended by petitioner for moving expenses during the taxable year 1972 are deductible. *Electric Tachometer Corp. v. Commissioner*, 37 T.C. 158 (1961).

*Decision will be entered for the petitioner.*