T.C. Memo. 1996-418


UNITED STATES TAX COURT


ROBERT J. AND ANNE L. WILSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 18481-93, 17723-94.    Filed September 17, 1996.


<u>Rex L. Sturm</u>, for petitioners.

<u>Michal Cline</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined deficiencies in, an addition to tax on, and penalties on petitioners' Federal income tax for taxable years 1989 and 1990 as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|-------------------------|-------------------|
| 1989 | $28,496.00 | -0- | $5,699.00 |

1990        28,316.93              $7,293.98              5,663.39

After concessions,[1] the issues for decision are: (1) Whether petitioners can defer recognition of gain realized on receipt of condemnation proceeds in taxable year 1989 under authority of section 1033.[2]  We hold they may not. (2) Whether petitioners had unreported interest income for taxable year 1989.  We hold they did.  (3) Whether petitioners are entitled to the capital loss claimed in taxable year 1989.  We hold they are to the extent provided below.  (4) Whether petitioners had unreported dividend income in taxable year 1989.  We hold they did. (5) Whether petitioners are liable for the section 6651 addition to tax because they failed to timely file their 1990 income tax return. We hold they are.  (6) Whether petitioners are liable for negligence under section 6662 for the years in issue.  We hold they are.

## FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulated facts and the accompanying exhibits are incorporated into our findings by this reference.  Petitioners, Robert J. and Anne L. Wilson, resided in Gaithersburg, Maryland, on the dates the

---

[1]    Pursuant to a stipulation of settled issues, the parties resolved a number of issues raised by the pleadings.  We leave it to the parties to include these adjustments in their Rule 155 computations.

[2]    All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

petitions were filed. The term "petitioner" refers to Robert J. Wilson.

During the years at issue, petitioners owned two adjacent parcels of real property located at DeSellum Avenue and Route 355 in Gaithersburg, Maryland (DeSellum property). From 1980 through the years at issue, petitioners used the DeSellum property as rental property: one parcel contained a residential rental unit, and the other parcel contained a building housing the dental offices of petitioner.

On June 5, 1980, the Maryland State Roads Commission of the Maryland State Highway Administration (the State) filed a "quick take" condemnation petition in the circuit court for Montgomery County, Maryland (circuit court), pursuant to sections 8-318 through 8-331 of the Transportation Article of the Annotated Code of Maryland (Maryland Code). The condemnation petition designated for taking 9,957 square feet of the DeSellum property in fee simple and 2,325 square feet of the DeSellum property in temporary easement. The property to be acquired in fee simple consisted of a strip of unimproved land along the entire front of the DeSellum property (approximately 344 feet); the strip abutted Route 355 and ranged in width from approximately 28.36 feet to 50.59 feet. The property to be acquired under a temporary easement consisted of a 6-foot wide strip of unimproved land which ran along almost the entire front of the DeSellum property between the strip being acquired in fee simple and the Dessellum

property not subject to the condemnation suit.  The State needed both the fee simple property and temporary easement property to widen and improve Route 355.

The State determined that the fair market value of the property and rights to be acquired was $28,400 as of June 5, 1980.  Accordingly, on the same day the condemnation petition was filed, the State, pursuant to Transportation section 8-323 of the Maryland Code, deposited $28,400 with the circuit court. Thereafter, petitioner was entitled to withdraw these funds by submitting a written request to the circuit court pursuant to section 8-323 of the Maryland Code.  After filing the condemnation petition and depositing the $28,400 with the circuit court, the State, pursuant to Transportation section 8-324 of the Maryland Code, was entitled to take possession of the property designated in the petition.[3]

On June 24, 1980, petitioner withdrew the $28,400 that the State had deposited with the circuit court.  In withdrawing these funds, petitioner acknowledged that, pursuant to section 8-323 of the Maryland Code, he was entitled to receive the sum without prejudice to any of his rights, provided he agreed to pay back the State the difference between the amount withdrawn and the

---

[3]    In a quick-take condemnation proceeding, the Maryland State Roads Commn. generally may take possession of the property before it acquires legal title to the property.  Md. Code Ann. Transp. secs. 8-324 and 8-325 (1993); see State Roads Commn. v. Orleans, 211 A.2d 715, 722 (Md. 1965).

final award, if the final award was less than the amount withdrawn.

Negotiations to obtain legal title to the property without a trial were unsuccessful, and, on May 20, 1981, the State adopted a resolution to institute formal condemnation proceedings against petitioner and to prosecute such proceedings to a conclusion.

The condemnation trial was set for March 31, 1987.[4] However, sometime prior to the trial, petitioner advised the State that the condemnation petition did not correctly identify the total area to be acquired in that it omitted 642 square feet of land. More specifically, the State had omitted from the description contained in the condemnation petition a 4-foot wide strip of land, approximately 160 feet long, extending along the front of a portion of the DeSellum property between Route 355 and the property described in the previously filed condemnation petition. The State had actually taken possession of this property on June 16, 1980.

Due to the discrepancies between the property actually possessed by the State and the property described in the condemnation petition, the trial was postponed. The circuit

---

[4]    Although the State utilized the "quick take" condemnation procedure to acquire petitioners' property, the record demonstrates that there was nothing quick about the condemnation. Sometime between 1980, when the condemnation petition was filed, and 1985, the parties agreed to place the condemnation case on a "stet" docket until the construction plans for final phase of the Route 355 project were completed. In 1985, the construction plans for the final phase of the Route 355 project were completed, and a motion was filed to take the case off the stet docket. The case was then reset for trial in 1987.

court granted the State permission to amend the condemnation petition.

On December 16, 1987, the State adopted an amended resolution, authorizing condemnation proceedings against the portion of the DeSellum property omitted from the condemnation petition. On January 5, 1988, the State filed an amended condemnation petition; the amended petition included the 642 square feet of the DeSellum property omitted from the original petition. In addition, on January 5, 1988, the State deposited $13,996 with the clerk of the circuit court, which was the State's estimated fair value for the additional 642 square feet of the DeSellum property.

In a letter to petitioner's attorney, R. Edwin Brown (petitioner's attorney), dated March 18, 1988, the State, through Assistant Attorney General Frank W. Wilson (AAG), offered to settle the condemnation case. More specifically, the State offered $54,921 for the 10,599 square feet condemned in fee simple and $5,231 for the 2,325 square feet taken in temporary easement, or $60,152 in total. In addition, the State offered prejudgment interest of 10 percent for 7-1/2 years on the excess of $60,152 over $28,400, the latter figure representing the amount deposited in 1980. The prejudgment interest on this excess amount, or $31,752, amounted to $23,814. In addition, the State offered $3,500 in "additional compromise". Thus, the

State's total offer was $87,466, which the State rounded to an offer of $87,500.

On July 14, 1989, in response to the foregoing offer, petitioner's attorney made the following counteroffer:

> If you will add the $3,500 additional compromise ahead of the pre-judgment interest and figure the pre-judgment interest at 10% for nine years and two months, I will recommend the settlement, on condition that this amount of money is on the table.

On July 28, 1989, the AAG responded to the foregoing letter as follows:

> I am writing in reply to your letter of July 14, 1989.  As you know, on January 7, 1988 we posted in Court an additional $13,996.  Therefore, I believe the additional 1-1/2 years of interest at 10% per annum would be on $17,756 as opposed to the larger amount.  That amount of interest comes to $2,663.40.

> As to the other point you made, I am not agreeable to paying interest on the $3,500 additional compromise.  That is simply a "sweetener" to close this case.

> However, adding the $2,663 to the $87,466 brings us to $90,129.  If that is acceptable to your client, I will seek authority from our Baltimore Office to do a Consent Inquisition.

In a further attempt to settle the case without a trial, the AAG and petitioner's attorney met for a settlement conference on September 20, 1989.  In connection with the conference, the parties completed settlement conference statements.  In the settlement conference statement completed by the AAG, the State indicated that it would settle the matter for "$63,652 + pre-judgment interest of $26,477 = $90,129.00 total."  In the settlement conference statement completed by petitioner's

attorney, petitioner's attorney indicated that petitioner would settle the matter for "Land $9.00 per square foot. Prejudgment interest at 10% per annum. Landscaping $14,275 (see attached) waived if settled."

The parties reached an agreement on September 20, 1989, whereby petitioners would receive $104,000 for the DeSellum property acquired by the State. In a letter to the circuit court, dated September 20, 1989, petitioner's attorney indicated that, because of tax considerations, it was important that prejudgment interest be included in the court's judgment. On October 19, 1989, a consent inquisition was signed and sealed by the circuit court, noting that upon the consent of the parties it was necessary for the State to acquire the property described in the amended petition and that the damages sustained by petitioner were in the sum of $104,000. In a stipulation and waiver entered into by the State and petitioner, the parties agreed that the $104,000 settlement set forth in the consent inquisition included all prejudgment interest. In addition, the State and petitioner agreed that effective September 20, 1989, petitioner would be entitled to postjudgment interest of 10 percent per annum on the sum of $61,604 until said sum is paid, with the $61,604 representing the unpaid difference between the $104,000 and the $42,396 previously deposited by the State with the circuit court.

The AAG explained the settlement with petitioner in a letter dated October 27, 1989, to Edward S. Harris, Esq., Maryland

Assistant Attorney General/Chief Counsel. In the letter, the AAG noted that $42,396 of the $104,000 settlement had been deposited with the circuit court, leaving the remainder, or $61,604, to be paid. He also noted that the $61,604 accrued postjudgment interest at 10 percent per annum from September 20, 1989, until actually paid; furthermore, he noted that, the "settlement includes all prejudgment interest." Finally, the AAG indicated that the prejudgment interest included in the settlement was $34,618.

On December 7, 1989, the State deposited with the circuit court $62,937.35 in full payment of the agreement entered into on September 20, 1989; this amount included the balance of $61,604 due on the consent inquisition, and postjudgment interest of $1,333.35 through December 8, 1989. However, a schedule attached to the letter which included the foregoing deposit indicated that no prejudgment interest was due and payable.

On January 10, 1990, petitioner petitioned the circuit court to withdraw the $13,996 and 62,937.35 previously deposited by the State, or $76,933.35, plus interest thereon. On January 11, 1990, the clerk of the circuit court issued a check to petitioner for $79,094.05, which included $76,933.35 previously deposited by the State and interest of $2,160.70.

From 1980 through the taxable years in issue, petitioners did not report on their Federal tax returns any of the condemnation proceeds received from the State, nor did they

report any interest income received from the State. However, petitioners now concede that, for taxable year 1989, they had unreported postjudgment interest income from the State in the amount of $1,333.35.[5]

Petitioners never asked the Internal Revenue Service (IRS) for an extension of time in which to buy replacement property pursuant to section 1033. Furthermore, petitioners did not, prior to October 1991, notify the IRS that they had bought replacement property with the condemnation proceeds.

In 1989, petitioners purchased property in Bath County, Virginia (Bath Co. property), paying $125,000 for such property. In 1993, petitioners rented out the Bath County property with the agreement that the property would remain on the market and, if sold, the rental agreement would terminate. Petitioner called the IRS in the Spring of 1989, and he was referred to section 1033; after reviewing the code section, he concluded that he had acquired replacement property that complied with section 1033.

In 1987, petitioners bought 691.043 shares of International Stock Fund from T. Rowe Price (stock fund) for the total amount of $19,750. In 1987, petitioners received distributions from the stock fund in the amount of $7,006.92. Petitioners reinvested this amount into the stock fund. In 1988, petitioners received

---

[5]     Although the parties stipulated that the postjudgment interest was $1,335.35, this appears to be a typographical error, as the schedule accompanying the State's deposit listed the postjudgment interest as $1,333.35. Accordingly, we find that the stipulated postjudgment interest income is $1,333.35.

distributions from the stock fund in the amount of $2,457.46 and reinvested this amount in the stock fund. In 1989, petitioners received distributions from the stock fund in the amount of $2,104.66. Petitioners did not report the receipt of the $2,104.66 on their 1989 income tax return. In 1989, petitioners sold the stock fund and received $27,205.57. On their 1989 tax return, petitioners did not report the sale of the stock fund.

For taxable year 1989, petitioners received a $573 distribution from a trust which they did not include in income.

For taxable year 1990, petitioners requested and were granted an extension to file their individual income tax return until August 15, 1991. Petitioners jointly filed their 1990 individual income tax return on October 14, 1991.

## OPINION

As a preliminary matter, we must resolve which party bears the burden of proof with respect to the issues presented. Generally, the taxpayer bears the burden of proof. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). However, the Commissioner bears the burden of proof with respect to, inter alia, any new matter. Rule 142(a); Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989). "A new theory that is presented to sustain a deficiency is treated as a new matter when it either alters the original deficiency or requires the presentation of different evidence." Wayne Bolt & Nut Co. v.

Commissioner, supra at 507; Achiro v. Commissioner, 77 T.C. 881, 890-891 (1981).

At trial, petitioners asserted that respondent's argument regarding prejudgment interest presented a new matter under Rule 142(a). Respondent's prejudgment interest argument did not require an increase in the deficiency arising from the condemnation proceeds, which were characterized as ordinary income in the notice. However, respondent's prejudgment interest argument did require the presentation of different evidence. Accordingly, at trial, we shifted the burden of proof to respondent on this issue. Rule 142(a); Wayne Bolt & Nut Co. v. Commissioner, supra at 507; Achiro v. Commissioner, supra at 890-891. Respondent does not dispute this determination on brief. In regard to the remaining issues, however, petitioners bear the burden of proof. Rule 142(a); INDOPCO, Inc. v. Commissioner, supra at 84.

Issue 1. Involuntary Conversion

Respondent determined that the $62,937.35 paid by the State to petitioners in tax year 1989 should be included in their income. Respondent further asserted that a portion of this $62,937.35 should be characterized as interest. Petitioners concede that $1,333.35 of the $62,937.35 is taxable interest income, but no more. Furthermore, they argue that, under the authority of section 1033, the remaining amount ($61,604) should not be included in their income in tax year 1989.

The Internal Revenue Code generally takes gains and losses into account only when they are realized by a sale or exchange. Sec. 1001(a), (c); sec. 1.1001-1(a), Income Tax Regs. When a taxpayer receives money or other property as consideration for the condemnation of his property, there has been an "exchange" for income tax purposes. See sec. 1033(a); Kieselbach v. Commissioner, 317 U.S. 399, 402 (1943); Tiefenbrunn v. Commissioner, 74 T.C. 1566, 1570 (1980).

Gain from the exchange of property is the excess of the amount realized from the exchange over the property's adjusted basis, while loss is the excess of the adjusted basis over the amount realized. Sec. 1001(a). The "amount realized" in an exchange is the sum of any money received plus the fair market value of any property (other than money) received. Sec. 1001(b). Amounts received as interest are not part of the "amount realized" from the exchange of property. Kieselbach v. Commissioner, supra at 403; Tiefenbrunn v. Commissioner, supra at 1572. The "adjusted basis" of property exchanged is the property's unadjusted basis (e.g., section 1012 cost basis) adjusted as provided in section 1016 (e.g., reduced for depreciation allowable). Sec. 1011(a).

Generally, gain or loss realized on an exchange of property must be recognized. Sec. 1001(c). An important exception to this general rule is provided by section 1033, which allows gain realized from certain involuntary conversions to be deferred.

Realized gain can be deferred under section 1033 if (1) nonrecognition treatment is elected, (2) qualified replacement property is purchased within time limits specified, and (3) the cost of the qualified replacement property equals or exceeds the amount realized on the conversion. Sec. 1033(a)(2)(A). The regulations provide that section 1033 deferral is "deemed" to be elected to the extent that a realized gain from an involuntary conversion is not included in the return for the taxable year or years in which any of such gain is realized. Sec. 1.1033(a)-2(c)(2), Income Tax Regs. If the property condemned is "real property (not including stock in trade or other property held primarily for sale) held for productive use in a trade or business", then replacement property will qualify for nonrecognition if it is either of "like kind" or "similar or related in service or use" to the property converted. Sec. 1033(g)(1); cf. sec. 1033(a)(2)(A) (property not described in sec. 1033(g)(1) may only be replaced with property that is "similar or related in service or use"). Furthermore, if the condemned property falls under the section 1033(g) rules, the replacement period is extended from 2 years to 3 years. Sec. 1033(g)(4); cf. sec. 1033(a)(2)(B)(i). Finally, if the taxpayer purchases replacement property for an amount less than the amount realized on the conversion, gain must be recognized on this excess amount pro tanto. Sec. 1033(a)(2)(A).

Respondent determined that gain realized on the condemnation of the DeSellum property did not qualify for nonrecognition under section 1033 because qualified replacement property was not purchased within the statutory replacement period. Petitioners assert that the Bath Co. property was qualified replacement property that was purchased within the statutory replacement period.

Respondent concedes that petitioners' DeSellum property was real property held for productive use in a trade or business; accordingly, the 3-year replacement period applies to petitioners. Sec. 1033(g)(4). To resolve the issue of whether qualified replacement property was timely acquired, we must determine when the 3-year replacement period began and ended.

Pursuant to section 1033(a)(2)(B), the 3-year replacement period begins "with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier". Section 1033(a)(2)(E) defines "disposition of the converted property" to mean, inter alia, the "condemnation of the converted property * * *." Whether there has been a condemnation for Federal tax law purposes depends on the substantive rights arising under State law. Dear Publication & Radio, Inc. v. Commissioner, 31 T.C. 1168, 1174 (1959), affd. 274 F.2d 656 (3d Cir. 1960); see Morgan v. Commissioner, 309 U.S. 78, 81 (1940).

There is no dispute that a portion of the DeSellum property was "involuntarily converted", as required by section 1033. There is a dispute, however, regarding the date of the conversion. Petitioners assert that the DeSellum property described in the original petition and the DeSellum property described in the amended petition were both condemned on December 16, 1987, noting that prior to this date the State had not properly commenced quick take condemnation proceedings against the subject property. Although the description of the property to be acquired in the original condemnation petition was incorrect, we do not think this fact is significant. Rather, we conclude that the property described in the original condemnation petition and the property described in the amended petition were condemned on June 16, 1980, because by that date the State had taken possession of both portions of the DeSellum property. It is this dispossession and appropriation of property by the State that Maryland law treats as a condemnation. State v. G.L. Cornell Co., 584 A.2d 1331, 1336-1337 (Md. 1991).

Having found that the section 1033 replacement period began on June 16, 1980, we now must examine when the replacement period ended. The replacement period ends 3 years "after the close of the first taxable year in which any part of the gain upon the conversion is realized, or * * * subject to such terms and conditions as my be specified by the Secretary". Sec. 1033(a)(2)(B)(i). In regard to the latter ending date, the

application for extension must be filed prior to the expiration of 3 years after the close of the first taxable year in which any part of the gain from the conversion is realized. Sec. 1.1033(a)-2(c)(3), Income Tax Regs.

Petitioners have stipulated that they did not ask the IRS for an extension of time in which to buy replacement property pursuant to section 1033. Accordingly, we must determine whether petitioners purchased replacement property within 3 years after the close of the first taxable year in which any part of the gain upon the conversion was realized. Sec. 1033(a)(2)(B)(i). The key to resolving this issue is the date on which gain was realized, if at all, on the conversion of the petitioners' property.

On June 5, 1980, the State deposited $28,400 with the circuit court as compensation to petitioners for condemnation of their property. The condemnation actually occurred on June 16, 1980, and, on June 24, 1980, petitioners withdrew the $28,400 deposit. Despite withdrawing these funds in 1980, petitioners argue that no amount was realized until 1989, when the amount of compensation that they were entitled to receive as a result of the condemnation was finally determined. We have previously addressed this argument in the context of condemnation deposits, and it is well settled that, under the claim of right doctrine, such amounts are realized to the taxpayer in the year received even though at the time of receipt conditions exist which might

require the taxpayer to return all or part of such sums.  E.g., Casalina Corp. v. Commissioner, 60 T.C. 694, 699 (1973), affd. 511 F.2d 1162 (4th Cir. 1975); R. A. Stewart & Co. v. Commissioner, 57 T.C. 122, 126 (1971); Scolari v. Commissioner, T.C. Memo. 1973-166, affd. 497 F.2d 962 (9th Cir. 1974); Town Park Hotel Corp. v. Commissioner, T.C. Memo. 1970-261, affd. 446 F.2d 878, 879 (6th Cir. 1971).  Accordingly, petitioners realized $28,400 on the condemnation of their property in 1980.  Sec. 1001(b).

Whether petitioners had a realized "gain" in 1980 depends upon their adjusted basis in the property condemned.  Sec. 1001(a).  The taxpayer's basis in property is a question of fact, and the taxpayer generally has the burden of proof on this issue. Burnet v. Houston, 283 U.S. 223, 227-228 (1931); Biltmore Homes, Inc. v. Commissioner, 288 F.2d 336, 342 (4th Cir. 1961), affg. T.C. Memo. 1960-53.  Here, petitioners presented no evidence regarding their basis in the condemned property, nor did they offer evidence of the basis of the entire DeSellum property. Furthermore, they did not address this issue at trial or on brief.  Since there is no proof that petitioners had any basis in the condemned property, we must treat the entire amount realized in 1980 as gain realized.  Sec. 1001(a); Burnet v. Houston, supra at 227-228; Biltmore Homes, Inc. v. Commissioner, supra at 342; Calderazzo v. Commissioner, T.C. Memo. 1975-1; cf. Ternovsky v. Commissioner, 66 T.C. 695, 698 (1976).

Since petitioners realized a gain upon the conversion of their property in 1980, which they did not include on their 1980 tax return, they constructively elected to have section 1033 apply to the gains arising from the condemnation. James River Apartments, Inc. v. Commissioner, 54 T.C. 618, 631 (1970), affd. per curiam 440 F.2d 412 (4th Cir. 1971); sec. 1.1033(a)-2(c)(2), Income Tax Regs. However, to defer this gain under section 1033, petitioners had to purchase replacement property within 3 years after the close of their 1980 taxable year. Sec. 1033(a)(2)(B)(i). Petitioners did not comply with this requirement, as they did not purchase the alleged qualified replacement property until 1989 (Bath Co. property), well after the close of the 3-year replacement period. Accordingly, we must sustain respondent's determination that no part of the $61,604 paid by the State to petitioners in tax year 1989 is entitled to nonrecognition under section 1033.

Issue 2. Interest Income

Although we have held that petitioners recognized gain from the condemnation of their property and that this gain cannot be deferred under section 1033, we still must address respondent's argument that some portion of the $61,604 represents interest income, with the remainder being gain for the exchange of the condemned property. Petitioner argues that no portion of the amount realized should be characterized as interest. As

discussed above, respondent has the burden of proof on this issue.

We note that the parties to the condemnation proceeding reached an agreement on September 20, 1989, whereby petitioners would receive $104,000 for the DeSellum property condemned by the State. The $61,604 at issue herein represents the excess of the $104,000 awarded to petitioners over the $42,396 previously deposited by the State with the circuit court ($28,400 on June 5, 1980 and $13,996 on January 5, 1988).[6]

Petitioners initially contend that, under Maryland law, prejudgment interest awarded in a condemnation is not interest, but is part of the "just compensation" to which petitioners were entitled under Maryland law. Respondent does not challenge petitioners' claim that the interest was part of the just compensation to which petitioners were entitled under Maryland law. See King v. State, 467 A.2d 1032, 1035 (Md. 1983). Instead, respondent argues that State law does not control the income tax consequences of the receipt of interest, and that interest received as part of the condemnation award is properly taxable as ordinary income, not as gain from the sale of property. We agree with respondent, as it is well settled that interest paid to compensate the property owner for delay in payment of a condemnation award is taxable as ordinary income to the recipient even though it is considered part of just

---

[6] The interest income conceded by petitioners ($1,333.35) represents the postjudgment interest accrued on the $61,604.

compensation under State law.  Kieselbach v. Commissioner, 317 U.S. 399, 403 (1943); Tiefenbrunn v. Commissioner, 74 T.C. 1566, 1571 (1980); Ferreira v. Commissioner, 57 T.C. 866, 871 (1972); Fulks v. Commissioner, T.C. Memo. 1989-190 (involving Maryland quick-take condemnation).

Petitioner next argues that, even if prejudgment interest is taxable as ordinary income, no portion of the $61,604 included prejudgment interest.  To determine whether interest was included in the condemnation settlement, we must examine the facts and circumstances of the case.  Smith v. Commissioner, 59 T.C. 107 (1972).  Principally, petitioner relies on the fact that a schedule attached to the letter which included the State's final installment of the condemnation award indicated that no prejudgment interest was payable.  We reject this argument, as the following facts and circumstances indicate that prejudgment interest was included in the $61,604:  (1) Prejudgment interest is a required component of just compensation under Maryland law, see King v. State, supra at 1035; (2) in the negotiations preceding the agreed upon condemnation award, prejudgment interest was included in the proposed settlement amounts, with the only issue being the principal amount upon which it would be computed and the rate of interest to be used; (3) on the date the settlement was reached, petitioners' counsel specifically asked the circuit court to include prejudgment interest in the court's judgment; and (4) in a stipulation and waiver entered into by

petitioner and the State, the parties agreed that settlement included prejudgment interest.  Based on the foregoing facts and circumstances, we find that $34,618 of the $61,604 should be treated as interest income to petitioners.

Issue 3. Capital Loss

In 1989, petitioners sold the stock fund for $27,205.57. Respondent determined that petitioners had a basis of $29,214.38 in the stock fund.  On brief, respondent concedes that petitioners had a basis of $29,214.38 in the stock fund, representing their original $19,750 investment plus two dividend reinvestments of $7,006.92 and $2,457.46. Accordingly, respondent further concedes that petitioners are entitled to a $2,008.81 loss on the sale of the stock fund.  Petitioners argue that their basis should be $2,104.66 higher than determined by respondent because they received a $2,104.66 distribution from the stock fund in 1989 that they reinvested in the stock fund.

Section 165(a) allows a taxpayer to deduct "any loss sustained during the taxable year and not compensated for by insurance or otherwise."  However, section 165(c) limits the scope of this deduction for individuals.  Individuals may take deductions only for losses which are incurred in a trade or business, losses incurred in transactions entered into for profit, and certain casualty and theft losses.  Sec. 165(c)(1), (2), and (3).

The basis for determining the amount of a loss is the adjusted basis for determining loss on a sale or exchange. Sec. 165(b); sec. 1.165-1(c), Income Tax Regs. Generally, the adjusted basis for determining gain or loss is the cost of such property. Secs. 1011 and 1012. It is generally accepted that an income item cannot be transformed into a capital asset, having a cost basis, until it is first included in income. Bryan v. Commissioner, 16 T.C. 972, 980-981 (1951); Gorman v. Commissioner, T.C. Memo. 1986-344. Thus, when a dividend is received and reinvested, the taxpayer's basis will include the amount of the dividend only to the extent that the dividend was included in income. See Gorman v. Commissioner, supra.

Petitioners did not report the receipt of the $2,104.66 distribution from the stock fund on their 1989 income tax return. Accordingly, they cannot claim that this amount was included in their stock fund basis. Therefore, we sustain respondent's determination.

Issue 4. Dividend Income

Respondent determined that the $573 distribution petitioners received from a qualified plan in 1989 should be included in petitioners' income. Petitioners argue that the distribution was rolled over into another qualified plan. We sustain respondent's determination, as petitioners have presented no evidence demonstrating that the distribution was properly reinvested. Rule 142(a).

Issue 5. Addition To Tax for Failure To Timely File

Respondent determined an addition to tax under section 6651(a) for petitioners' failure to timely file their 1990 Federal income tax return. Such addition is presumed correct and will be upheld unless the taxpayer presents evidence controverting its applicability. Abramo v. Commissioner, 78 T.C. 154, 163 (1982).

Section 6651(a)(1) provides for an addition to tax for failure to file a Federal income tax return by its due date determined with regard to any extension of time for filing, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Calendar year individual taxpayers must file their Federal income tax return by April 15 following the close of the calendar year. Sec. 6072(a). In this case, respondent concedes that petitioners were granted an extension of time to file their 1990 income tax return until

August 15, 1991. However, petitioners did not file their 1990 return until October 14, 1991.

Petitioners presented no evidence to prove that their failure to timely file their 1990 tax return was due to reasonable cause and not due to willful neglect. We therefore hold that petitioners are liable for the addition to tax under section 6651(a)(1).

Issue 6. Negligence Penalty

Respondent determined an accuracy-related penalty for negligence under section 6662(a) against petitioners for their 1989 and 1990 taxable years.

Section 6662(a) and (b)(1) provides that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, then there shall be added to the tax an amount equal to 20 percent of the amount of the underpayment which is so attributable. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Petitioners have the burden of proving that respondent's determination of the penalty is in error. Rule 142(a); Billman v. Commissioner, 83 T.C. 534, 541 (1984), affd. 847 F.2d 887 (D.C. Cir. 1988).

At trial and on brief, petitioners did not specifically address the issue of negligence. Therefore, we conclude that

petitioners failed to carry their burden of proof, and we sustain respondent's determination of the penalty for negligence for 1989 and 1990.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155.</u>